## TOMASINI *v.* YOUNGSTOWN MINES CORPORATION.

1. WORKMEN'S COMPENSATION—EMPLOYER'S KNOWLEDGE—INJURY—
   DISABILITY—LIMITATION OF ACTIONS.

   An employer's knowledge of nondisabling injury, as distinguished from knowledge of disability due to injury, does not toll the limitational period provided in the workmen's compensation act (CL 1948, § 417.10).

2. SAME—BURDEN OF PROOF.

   One claiming workmen's compensation who has failed to sustain his burden of proof that the employer had timely knowledge of plaintiff's statutory disablement may not recover workmen's compensation (CL 1948, § 417.10).

3. SAME—OCCUPATIONAL DISEASE—NOTICE OF DISABLEMENT.

   The Supreme Court has no right to manufacture a legislative intent that long-time retired employees be exempted from the operation of provisions of the workmen's compensation act requiring that employer be given notice of disablement from an occupational disease within a prescribed period (CL 1948, § 417.10).

4. SAME—DATE OF DISABLEMENT—TIME OF INJURY.

   The *date of disablement* determines when rights accrue under the workmen's compensation act, when notice must be given, and when claim must be filed; *time of injury* determines the amount of weekly compensation benefits to be paid to the extent such benefits depend upon an employee's dependency status and his average weekly wage (CL 1948, § 412.1 *et seq.*, and § 417.1 *et seq.*, as amended).

5. SAME—DATE OF DISABLEMENT—EVIDENCE.

   The workmen's compensation appeal board is required to determine, in proceedings under the workmen's compensation act,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 380.
[2] 58 Am Jur, Workmen's Compensation § 386.
  Requirement of workmen's compensation act as to notice of accident or injury.  78 ALR 1232, 92 ALR 505, 107 ALR 815, 145 ALR 1263.
[4, 5] 58 Am Jur, Workmen's Compensation § 214.
[6] 58 Am Jur, Workmen's Compensation § 375.
  Requirement of workmen's compensation act as to notice of accident or injury.  78 ALR 1232, 92 ALR 505, 107 ALR 815, 145 ALR 1263.

the date of disablement from proof adduced in the proceeding (CL 1948, § 417.1 *et seq.*, as amended).

6. SAME—SILICOSIS—TIMELY NOTICE OF DISABLEMENT.

Plaintiff was not entitled to an award of workmen's compensation for disability by silicosis, where he failed to give notice of disablement arising from such disease contracted during his years of employment with defendant mining corporation until after lapse of 2 years from date of such disability and more than 120 days after he learned of the silicotic condition, notwithstanding defendant had had annual X-ray examinations made and had complete and authentic information as to plaintiff's condition (CL 1948, § 417.10).

SOURIS, J., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted October 10, 1961. (Docket No. 100, Calendar No. 48,658.) Decided May 18, 1962.

Bruno Tomasini presented his claim against the Youngstown Mines Corporation, former employer, for compensation because of disability from occupational silicosis. Award to plaintiff. Defendant appeals. Reversed and remanded for entry of order vacating award.

*Santini & Jacobs,* for plaintiff.

*Charles M. Humphrey, Jr.,* and *Lawrence F. Weis,* for defendant.

BLACK, J. Defendant, granted leave, appeals from an award to plaintiff under part 7 of the workmen's compensation law (CL 1948 and CLS 1956, § 417.1 *et seq.* [Stat Ann 1960 Rev § 17.220 *et seq.*]). The award was made for total disability, commencing June 3, 1955, that being the appeal board's determined date of "disability by silicosis."

The duly raised question of want of timely notice of disablement (see section 10 of said part 7 [CL 1948, § 417.10 (Stat Ann 1960 Rev § 17.229)]) is decisive and calls for reversal of such award. Plain-

tiff failed to give notice of disablement until filing of application for adjustment of claim on September 11, 1957. That was more than 2 years after plaintiff quit his job with defendant[*]; also more than 120 days after he first learned of the condition which is alleged to be the cause of statutory disablement. Unless plaintiff has proved that defendant had knowledge of disablement, prior to or on the date he voluntarily left its employ, such notice came too late.

For information of the profession, the appeal board's treatment of the above question is related as follows:

"Defendant also contends that plaintiff's claim is barred by the pertinent statute of limitations contained in the workmen's compensation act.

"Plaintiff advances as 1 argument that he was first aware of his true chest condition on or about May 8, 1957, and that he made timely application thereafter. The application for hearing was filed on September 11, 1957, and copy was mailed to defendant on September 12, 1957. However, this was more than 120 days subsequent to May 8, 1957, and consequently was not within the period specified by section 10, part 7 of the workmen's compensation act.

"However, it is clear from the undisputed testimony that defendant caused plaintiff to be examined annually including X-rays from and after 1935. Complete reports were received by defendant from Saranac Lake. Defendant at all times had at its finger tips complete and authentic information as to plaintiff's condition. Defendant had full and reliable sources of information and means of knowl-

---

[*] Plaintiff testified:

"*Q.* We have to ask you these questions for the record. During the time before you quit the mine did you ever talk to Mr. Purpich [plaintiff's foreman] about having these troubles, you yourself?

"*A.* No. I didn't mention to nobody. I going to quit I tell them, that's all."

The testimony of Mr. Purpich was to the identical effect; that plaintiff quit without complaint and "told me he was going on pension."

edge relative to plaintiff's silicotic condition from which the conclusion should have been drawn that plaintiff should no longer be exposed to silica hazards at the time he left the mine on June 3, 1955. Defendant thus had notice and knowledge of injury. Having such knowledge defendant failed to file any report of injury. Such failure prevented the statute of limitations from running. Consequently the filing and service of plaintiff's application for hearing constituted timely and proper claim of compensation."

Note the board's employment of the word "injury," rather than "disablement" or "disability." It is quite erroneous to say that an employer's knowledge of nondisabling "injury," distinguished from knowledge of *disability* due to "injury," tolls the limitational period section 10 ordains. The appeal board, pre-eminently skilled in the use of terms employed by the compensation act, must have known that there was no proof of statutory "disability" or "disablement." Thus the board must have used—advertently—the foregoing expression "knowledge of injury." Such knowledge, even if proven, is not sufficient to breathe life into this barred claim.

Mr. Tomasini continued to work for the defendant employer, as a miner of ore, some 42 years. Then, at age 68, 3 years after he became eligible to retire on pension, he decided to retire and receive such pension without notifying the employer (then or thereafter until September 11, 1957) of disablement and without being able, before the referee or appeal board, to prove that he became disabled while he remained at such employment.

Is there proof—any proof—supporting plaintiff's contention that the defendant employer had timely *knowledge* of statutory disablement? He bore the burden of proof on that score and failed utterly to sustain it. As before said there is quite a distinction between the continued sufferance of a nondisabling

occupational ailment and the fact or occurrence of statutory disablement. Daily wage earners as well as sedentary executives may endure the petulant pip throughout their working days and yet, even though such *morbus* be or become regarded as a part 7 "disease," no right of compensation on account thereof can accrue unless the proven result is statutory disablement. Chilblains and headaches, or, say a chronically tympanitic tummy, may continue to vex bench workers, record keepers, and vice-presidents, yet if no resulting "disablement" arise, and is proved, compensation cannot be awarded. Nondisabling afflictions are not compensable, and it requires something more than employer knowledge of such an affliction to stop the ticking of section 10's limitational clock.

Here, by direct and unavoidable statutory limitation, a former employee's claim comes too late. He must or should lose on that account. Had his claim been timely, and had it been supported by due proof of statutory disablement, he doubtless would have won. That, in sum, is all there is to this case; a case where the administrative agency below, in order to write up an apparently plausible finding for plaintiff, had to pluck from thin legal air a ruling of law that timely employer knowledge of nondisabling "injury" takes the place under section 10 of timely employer knowledge of disablement. The appeal board has no right to manufacture law in such manner and we in turn have no right to manufacture a legislative intent that long-time retired employees be exempted from the operation of said section 10 as Justice SOURIS would do here. Such function belongs to the legislature. That branch of government has told us, in plain section 10 words, that Mr. Tomasini's claim is both 2 years late and 120 days late. *Satis verba.*

For recent emphasis of what "date of disablement" means, see the unanimous opinion of *Joslin* v. *Camp-*

*bell, Wyant & Cannon Foundry Co.,* 359 Mich 420, 428 (per SOURIS, J.):

"The foregoing interpretations of parts 2 and 7 of the act give meaning to all sections thereof. Thus, 'date of disablement' determines when rights accrue, when notice must be given, and when claim must be filed, while 'time of injury' determines the amount of weekly compensation benefits to be paid to the extent such benefits depend upon an employee's dependency status and his average weekly wage."

As said in *Joslin* (p 425), the appeal board is required "to determine the date of disablement"; to which I would add that the board is required to determine such date from proof and proof only. There is no evidence here, of any "date of disablement," excepting that which was given by plaintiff's medical witness, Dr. Martinetti. The only date of disablement found and determined by him was May 8, 1957. That was when he first saw and examined the plaintiff. To this undisputed fact should be added 2 others. The first is that Dr. Martinetti refused, when asked the direct question, to opine that plaintiff was disabled prior to the date of such first examination. The second is that plaintiff did not recall him to the stand, after the employer's Saranac Lake X-ray negatives had been offered in evidence and interpreted by defendant's medical witnesses, to opine that such negatives disclosed or tended to disclose a condition of disability.

I vote to reverse and remand for vacation of the award.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, and OTIS M. SMITH, JJ., concurred with BLACK, J.

SOURIS, J. (*dissenting*). There is proof in this record from which the appeal board could, and did, find that the defendant employer had timely knowl-

edge of statutory disablement. That being so, our review of this administrative board's findings must result in affirmance unless we are to disregard the legislative restraint imposed upon our review of such findings. CL 1948, § 413.12 (Stat Ann 1960 Rev § 17.186); *McVicar* v. *Harper Hospital,* 313 Mich 48; *Redfern* v. *Sparks-Withington Co.,* 353 Mich 286.

First, as to the board's finding of statutory disability: The board did find statutory disability— total disability; it did not, "advertently" or inadvertently, find only that plaintiff suffered an "injury" which justly may be called a nondisabling occupational ailment. The pertinent part of the appeal board's opinion follows:

"We find as follows: Plaintiff has definitely established severe exposure to the hazards of silica over a period of many years up to June 3, 1955. Such exposure directly resulted in silicosis which has totally disabled plaintiff at all times since June 3, 1955, from performing the work he was doing for defendant on and prior to that date. Plaintiff has sustained a personal injury arising out of and in the course of employment and due to causes and conditions characteristic of and peculiar to the business of the employer. It is very clear from a review of all the testimony that plaintiff should not be further exposed to the hazard of underground mining which caused his injury."

Evidentiary support for such findings, sufficient to stay our hand from reversal, may be found in the testimony of the plaintiff and the medical witnesses. Defendant's doctors testified plaintiff's condition was no different at the time of hearing than it was when he left the mine in 1955 and had been for some years earlier. They based this conclusion upon examination of X-rays defendant had taken of plaintiff during annual physical examinations from 1935. To defendant's doctors, plaintiff's condition was only

a first stage silicosis which they claimed would not disable him from mine work. However, plaintiff's doctor testified that plaintiff's current condition was a second stage silicosis and that he should not be put back underground where he would be exposed to silica dust. The appeal board was entitled to conclude, as it did, that plaintiff's condition in 1955 was the same as it was in 1957. There was no evidence to the contrary. There remained only determination of the nature of that condition and as to that, the evidence was in conflict. Acceptance by the board of plaintiff's doctor's testimony, whether we would have done so or not were we sitting as members of the appeal board, cannot be disregarded or reversed by us in this review. Its finding that plaintiff's silicosis had totally disabled him within the meaning of the statute is supported additionally by plaintiff's own testimony of chest pains and shortness of breath occurring during the latter months of his employment which required him to rest 2, 3 or 4 minutes at a time while climbing ladders at work.

What makes this case difficult is the meaning of the word "disability" as used in our workmen's compensation act. The statute says the word "means the state of being disabled from earning full wages at the work in which the employee was last subjected to the conditions resulting in disability." CL 1948, § 417.1 (Stat Ann 1960 Rev § 17.220). Defendant would have us say that there can be no statutory disability so long as a workman continues to work; that there can be no statutory disability until he drops in his tracks. It is suggested that because Bruno Tomasini continued to work as an underground iron ore miner even after chest pains required him to rest 2, 3, or 4 minutes at a time while climbing ladders, and even after X-rays disclosed to his employer that he should not be exposed to silica dust because of a silicosis condition, it cannot be

said he was disabled within the statutory meaning of the term. He worked until the last, 42 years in defendant's mine, and then retired; proof enough, it is said, that his occupational ailment was nondisabling. What this amounts to is that a worker cannot be said to be disabled from earning full wages at his work in the mine so long as he has the strength to do the job. I cannot accept such a barbaric limitation, the application of which in this case demonstrates the crippling effect it would have on our workmen's compensation act.

That there are nondisabling occupational ailments, I do not doubt. But I reject an appellate conclusion to that effect on this record in the teeth of a valid appeal board finding to the contrary. The evidence in this record, in my view, supports the appeal board's finding that on June 3, 1955, plaintiff was totally disabled from performing the work he had done for defendant because of silicosis resulting from exposure to silica hazards encountered in his employment.

There remains for discussion only the issue of defendant's knowledge of plaintiff's statutory disability, knowledge which the appeal board found defendant should have had from information available to it and which placed upon defendant the burden of filing the report of injury required by section 15, part 2 (CLS 1956, § 412.15 [Stat Ann 1960 Rev § 17.165]) of the act. The issue is crucial to decision because if the appeal board was right, defendant's failure to file the report tolls the statute of limitations upon plaintiff's duty to file timely notice of disability with his employer. Section 10, part 7 (CL 1948, § 417.10 [Stat Ann 1960 Rev § 17.229]) of the act.

The appeal board found that defendant had available to it the annual X-rays of plaintiff's chest which disclosed his silicotic condition and that defendant

should have known therefrom that on June 3, 1955, plaintiff should not be exposed to silica hazards and "thus had notice and knowledge of injury." As I read Mr. Justice BLACK's opinion, he deems it significant that the appeal board said "notice and knowledge of injury" rather than of "disablement" or of "disability." I cannot agree. I think it a matter of insignificance in this occupational disease case that the board found the employer had notice and knowledge of injury, rather than of disease, disablement or disability. In the first place, the context of the appeal board's findings quoted in Justice BLACK's opinion, that which precedes and that which follows the criticized finding, clearly discloses that, whatever word was used to describe the fact, the board found defendant had notice and knowledge that plaintiff was statutorily disabled. Furthermore, section 15, part 2, which imposes the burden upon the employer of making a report to the department upon acquiring such notice or knowledge, itself speaks in terms of "notice or knowledge" of the happening of the injury.

It is that section which requires an injured employee to give notice of his injury to his employer within 3 months after the happening of the injury. It also provides, however, that when the employer has notice or knowledge of the "happening of the injury" within 3 months of its occurrence, and fails to file a report of such injury with the department, the statute of limitations shall not run against the employee's claim until said report is filed. This section is found in that part of the act dealing with personal injuries, and its language is appropriate for that purpose. But we deal here with an occupational disease, and claims for compensation for disability caused by occupational diseases are covered by the provisions of part 7 of the act.

Section 10 of part 7 of the act adopts for occupational disease claims the same procedural requirements for giving notice to the employer set forth in section 15 of part 2, and this is done by simple reference to the requirements of the latter section without restating them in terms more appropriate to occupational diseases.

Without further statutory assistance it would seem to me that logic and common sense would require our reading the language of section 15, part 2, when applied to occupational disease claims, in such fashion that it be made effective. But in this instance the legislature has specifically assisted our labors, perhaps anticipating that some might have difficulty applying statutory language designed for personal injury claims but adopted by reference for occupational disease claims. In section 1 of part 7[1] the legislature expressly defined "personal injury" to include an occupational disease or disability. When the appeal board makes a finding in a part 7 case that the employer "had notice and knowledge of injury," as was made in this case, I venture to suggest that, since the word "injury" includes by statutory definition "diseases" and "disabilities," such finding means that the employer had knowledge of the disease or disability.

But there is more. In section 2 of part 7[2] the legislature provided that disablement from occupational diseases "shall be treated as the happening of a personal injury" within the meaning of the act. That section further provides that, with exceptions not here relevant, the "procedure and practice" provided in the act shall apply to all proceedings under part 7 of the act, that part dealing with occupational diseases.

[1] CL 1948, § 417.1 (Stat Ann 1960 Rev § 17.220).
[2] CL 1948, § 417.2 (Stat Ann 1960 Rev § 17.221).

When the "procedure and practice" requirements of section 15 of part 2 are sought to be applied to occupational disease cases, we are entitled, indeed required, by section 2 of part 7 to read the words "happening of the injury" as if they read "happening of the disablement." See *Joslin* v. *Campbell, Wyant & Cannon Foundry Co.*, 359 Mich 420, at pages 427 and 428.

It is with this statutory scheme in mind we must review the appeal board's decision. When it found that the employer "had notice and knowledge of injury" as a result of annual X-rays it had taken of the employee's chest since 1935, that finding is not vulnerable to judicial reversal for failure to use the words "disablement" or "disability." The finding is good either because the legislature has said the word "injury" shall include disease or disability, or because the legislature has said that disablement from an occupational disease "shall be treated as the happening of a personal injury." In either event, the effect of the appeal board's finding of fact with reference to the employer's knowledge tolls the statute of limitations until the employer files with the department a "report of said injury."

For the foregoing reasons, I would affirm and award costs to the plaintiff.

Adams, J., took no part in the decision of this case.