SOSNOWSKI v. DANDY HAMBURGER

1. WORKMEN'S COMPENSATION—AMOUNT OF COMPENSATION—TIME OF INJURY—ACCRUAL OF RIGHTS—DATE OF DISABLEMENT.

   The amount of workmen's compensation benefits to be paid, to the extent that such benefits depend upon an employee's dependency status and his average weekly wage, are determined by circumstances at the time of the injury but the accrual of rights, the time that notice must be given, and when the claim must be filed are determined by the date of disablement.

2. WORKMEN'S COMPENSATION — APPEAL AND ERROR — WORKMEN'S COMPENSATION APPEAL BOARD.

   Questions of fact in a workmen's compensation matter are left to the determination of the workmen's compensation appeal board and will not be reversed by the courts if the finding of fact is supported by the record.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 December 11, 1968, at Detroit. (Docket No. 5,074.) Decided May 29, 1969. Leave to appeal granted October 13, 1969. See 382 Mich 785.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation §§ 307, 309, 380.
[2] 58 Am Jur, Workmen's Compensation § 461.

Lottie Sosnowski presented her claim against Dandy Hamburger, St. Paul Insurance Company, and American States Insurance Company, for compensation for a disability sustained in the course of employment. Compensation awarded, and American States Insurance Company found to be liable for the payments. Defendant American States Insurance Company appeals to Workmen's Compensation Appeal Board. Modified and affirmed. Defendant American States Insurance Company appeals. Appeal board decision affirmed.

*John F. Chambers,* for plaintiff.

*Edward K. Pedersen,* for defendants Dandy Hamburger and St. Paul Insurance Company.

*Mansfield, Sulzbach & Jones,* for defendant American States Insurance Company.

BEFORE: McGREGOR, P. J., and FITZGERALD and CYNAR,* JJ.

CYNAR, J. From the spring of 1962 until December 3, 1963, the American States Insurance Company insured the coverage of the employer of the plaintiff under the workmen's compensation act, the employer being Dandy Hamburger. From December 3, 1963, St. Paul Insurance Company was the insurance carrier through September 7, 1964, the last day of plaintiff's employment.

On November 30, 1964, Dr. Harold Plotnick testified that he was a licensed practicing physician, specializing in dermatology. He saw the plaintiff on September 8, 1964, regarding a painful swelling

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

of the right ring finger which had its onset on September 2, 1964. He saw her on October 3, 1964, and found and excised a cystic structure on the right ring finger. It was his opinion that the cyst which was excised was different from any difficulty that she had previously had. He stated that on January 24, 1964, when he saw her, she was completely clear of any dermatitis of her hands. He did not believe the cyst related to her work, nor was it related to the previous type of dermatitis.

On October 7, 1965, Dr. Harold Plotnick further testified that he saw the plaintiff on August 6, 1965. He first saw her on November 13, 1962, for contact dermatitis, and treated her for that condition until she was discharged in 1964 when there was no trace of dermatitis on her hands. He then saw her on September 8, 1964, and several other times in September and early in October. It was his opinion that, in September, 1964, and subsequently, there was no evidence of a neurodermatitis condition. The doctor was uncertain whether the plaintiff's removal from irritants back in 1962 would clear up her condition; he said that many people with dermatitis work in wet conditions and with treatment continue to work without any disability, clearing up of the condition varying from patient to patient. Since she has not been employed since September, 1964, he thought it was reasonable for him to assume that any irritant responsible for the changes seen in the skin at this time are occurring in her home life. He did not think that working over the four-year period aggravated her condition.

The deposition of Dr. Edward S. Wikiera, taken on June 24, 1965, in behalf of defendants Dandy Hamburger and St. Paul Insurance Company was received. Dr. Wikiera, a licensed physician specializing in the field of dermatology, first saw the plain-

tiff on June 26, 1962, on the recommendation of another patient. The plaintiff stated that she had this problem for three months, and that she had worked as a waitress for nine months at Dandy Hamburger restaurant where, in addition to washing counters with ammonia water, she used strong detergents. His examination indicated an eruption on her hands and an infection of the left thumb. His diagnosis was contact dermatitis which was the result of constant immersion of the fingers and hands in water, this being related to her job. Treatment was undertaken and he saw her weekly. Subsequently, she was referred to another physician. He did not discharge her from his care. He felt that she still has residual effects of the initial contact dermatitis. He saw her next on September 17, 1964, when he found a dermatitis condition which was changing and developing into a neurodermatitis. He stated that the contact dermatitis was from a defatting agent, and this condition, after it had persisted for some time due to continuous rubbing and scratching, was causing the patient to develop a neurodermatitis. When seen in September, 1964, the patient gave him a history since last seen by him of continuous difficulty. It is his opinion, based on reasonable medical certainty, that her condition when last seen is related to the condition which he initially found, a complication of the contact dermatitis, this patient being a nervous person whose hands perspire freely and who scratches her hands to relieve the sensation of itching. The doctor was of the opinion that the rubbing and scratching could not be completely disassociated from the old dermatitis. It was the doctor's opinion that her condition in September, 1964, as compared to November, 1962, had not worsened but persisted · he said that he objected to her working in 1962, and that the rash some eighteen months after November,

1962, was the same, except for the thumb factor which did not relate to contact dermatitis.

On October 4, 1965 and October 7, 1965, testimony of the plaintiff indicated that she commenced work with Dandy Hamburger on September 29, 1961, as a waitress. She had to work at the grill, clean the grill, use ammonia to clean counters, wash walls and backroom floors, work with wet onions and pickles, and clean up with solvents and dishwashing compound. In addition to her earning $1 per hour, she received tips averaging $3 per week, food valued at $1 per day, and some profit-sharing bonuses valued at $300 per year. She worked a 6-day week; her hours worked were always in excess of 48. In June, 1962, her hands were very bad; they were open, split, very swollen and sore. She went to see Dr. Wikiera for both hands on the recommendation of a friend. She was treated by Dr. Wikiera; and, thereafter, she went to the Industrial Clinic and subsequently started treatment by Dr. Plotnick. During the treatment, Dr. Plotnick indicated that her condition would be helped by medicine but would not be cured. She was treated by Dr. Plotnick on and off, the last time being January, 1964; at that time he also prescribed medication to relieve and control dermatitis. Plaintiff also testified that American States Insurance Company advised her that they would no longer pay for medication which they had paid for in the past; and she used up such medication as she had, using it sparingly. On that last date in January of 1964, she discussed her hands with the doctor, and she told him that her hands were not well. He told her if they got worse to contact the insurance agent.

The transcript shows:

"*Q.* And you are saying to us that your first known difficulty with your hands was about in April of 1962?

"*A.* Yes.

"*Q.* And you are telling us that from April of 1962 down until you terminated in September, anytime you came in contact with solvents you had your problems?

"*A.* Yes.

"*Q.* And you are telling us that from your note dictation there, that you wrote out in August of 1964 that the condition then, from contact with solvents was worse than ever before?

"*A.* Yes, that's when I got the infected finger.

"*Q.* So in effect, what you are telling us is that constantly, from '62 to '63 and along in '64, your condition has gradually worsened and worsened, is that right?

"*A.* Yes.

"*Q.* You are telling us that you worked as long as you could?

"*A.* Yes.

"*Q.* You are telling us that you continued working through September 7, 1964?

"*A.* Yes.

"*Q.* And you are telling us that you didn't lose time until September 7, 1964?

"*A.* Yes.

"*Q.* And you are telling us that your problem, from the standpoint of inability to continue work, came into being September, 1964, and has continued thereafter?

"*A.* Yes.

"*Q.* I take it that from your testimony then, if I understand correctly when you were treated by Doctor Wikiera or treated by Doctor Plotnick using the creams, the medications, the ointments they gave you, you had periods where you would be a lot better and then further contacts and you would worsen?

"*A.* Yes.

"*Q.* And the problem has become an increasing severe problem from the standpoint of worsening through the years, is that right?

"*A.* I don't understand you.

"*Q.* Well, I mean your condition would get worse and worse as you had these flare ups?

"*A.* Yes.

\* \* \*

"*Q. (By Mr. Mansfield):* In other words, as far as you are concerned, from September 7, 1964 on, you have been unable to do any work where you came in contact with wet—

"*A.* Yes.

"*Q.* — solutions, water, anything?

"*A.* Yes.

"*Q.* But up until then you, in fact, did perform the work and felt able to perform it?

"*A.* I was doing it with pain and agony.

\* \* \*

"*Cross-examination by Mr. Pedersen:*

"*Q.* Did you lose any time from work from April of 1963 until September of 1964?

"*A.* No.

"*Q.* When you last saw Doctor Plotnick in January of 1964, were your hands relatively clear of this difficulty?

"*A.* No, they weren't.

"*Q.* Did you continue to use the medication which he prescribed for you?

"*A.* Yes, I did.

"*Q.* When you used the medication, how was the condition?

"*A.* On and off basis.

"*Q.* In other words, the medication itself wouldn't stop the difficulty you were having?

"*A.* No.

"*Q.* Would it help?

"*A.* It would help.

"*Q.* And when you stopped using the medication what would happen?

"*A.* Then they would flare up more.

"*Q.* Was that true before January of 1964?

"*A.* Yes, it was the same.

"*Q.* Has that been true ever since April of 1962?

"*A.* Before April of—

"*Q.* Since 1962, in April, has this been true, that the medication helps?

"*A.* At times.

"*Q.* But doesn't stop it completely?

"*A.* No.

"*Q.* Now, if the only difficulty you had with your hands has been the infection you got in your ring finger, could you work today?

"*A.* I could do dry work, yes."

The workmen's compensation hearing referee made the following finding:

"That plaintiff's disability is a result of the original eruption in 1962 at which time American States Ins. Co. carried the risk for defendant Dandy Hamburger. It is further found, therefore, that liability for paying the compensation ordered herein rests with said American States Ins. Co.

"The records show that St. Paul Ins. Co. voluntarily assumed the payment of weekly benefits to this plaintiff from 9–8–64 to the present. It is therefore ordered that American States Ins. Co. shall refund to St. Paul Ins. Co. an amount equal to the amount of compensation voluntarily paid by St. Paul Ins. Co. Further American States Ins. Co. shall then have credit for all amounts so paid as against the compensation ordered herein to be paid.

"Defendant American States Ins. Co. shall provide such reasonable and necessary medical care as is provided for in Sec. 4, Part II of the Act."

The workmen's compensation appeal board made a determination that the plaintiff's present wage loss was directly connected with the contact dermatitis condition the plaintiff acquired and sustained in 1962 and its continuance and progression to the plaintiff's present condition of neurodermatitis, and further, that the failure of American States Insurance Company to supply plaintiff with proper and necessary medication for treatment of her 1962 condition was also causally connected to plaintiff's pres-

ent wage loss. The appeal board further found that the referee's ruling that the plaintiff had an average weekly wage of $58 was not correct and that the proper average wage should be $65 a week. Other than this modification, the award of the referee below was affirmed.

Insofar as is material to this case, in *Joslin* v. *Campbell, Wyant & Cannon Foundry Co.* (1960), 359 Mich 420, the Court's interpretation of parts 2 and 7 of the workmen's compensation act was as follows:

"Thus, 'date of disablement' determines when rights accrue, when notice must be given, and when claim must be filed, while 'time of injury' determines the amount of weekly compensation benefits to be paid to the extent such benefits depend upon an employee's dependency status and his average weekly wage."

Later case law supports the above interpretation. *Jordon* v. *Michigan Malleable Iron Company* (1961), 363 Mich 256, and *Tomasini* v. *Youngstown Mines Corporation* (1962), 366 Mich 503.

In the matter of *Nay* v. *King-Seeley Corporation* (1954), 339 Mich 140 (4 NCCA 3d 526), plaintiff received compensation from May 22, 1950, to April 1, 1951, and partial compensation thereafter. She was off work receiving compensation for periods of time from 1949 until December 24, 1950, whenever her contact dermatitis flared up. She returned to part-time work on April 1, 1951, being off work frequently thereafter. Defendant insurer carried the risk to September 1, 1950, and, thereafter, defendant employer was self-insured. The commission found that her condition in June, 1951, was traceable to her employment before September 1, 1950. Since it was not for the Court to weigh the testimony, there being competent testimony to support the finding of the commission, the award was affirmed.

The applicability of CL 1948, § 417.9 as amended by PA 1962, No 189 (Stat Ann 1963 Cum Supp § 17-.228), entitled "Workmen's compensation; occupational disease; apportionment of employers' liability; procedure." was not raised or considered, and should not be considered at this time for this reason and for the reason that the issue of weight to be given the testimony would be involved in such a consideration.

Questions of facts are matters left to the determination of the Workmen's Compensation Appeal Board and will not be reversed by the Courts if the finding of fact is supported by the record. *Turner* v. *Consumers Power Company* (1965), 376 Mich 188.

The determination as modified by the appeal board is affirmed, with costs to defendant-appellee.

All concurred.