MEADS v GENERAL MOTORS CORPORATION

1. WORKMEN'S COMPENSATION—CONSTITUTIONAL LAW—FINDINGS OF
   FACT—POWERS OF REVIEW—STATUTES.

   Appropriate findings of fact made by the Workmen's Compensa-
   tion Appeal Board must be accepted by the Court of Appeals
   even though there is conflicting evidence (Const 1963, art 6,
   § 28, MCLA 418.861; MSA 17.237[861]).

2. WORKMEN'S COMPENSATION—INJURY—OCCUPATIONAL DISEASE—NO-
   TICE REQUIREMENTS—STATUTES.

   An employee is required to give notice of an injury to his
   employer within 3 months after the happening thereof and to
   make his claim for compensation with respect to the injury
   within 6 months after its occurrence; this same rule applies to
   occupational disease and death, except notice shall be given to
   the employer within 120 days after the disablement (MCLA
   418.381[1], 418.441; MSA 17.237[381][1], 17.237[441]).

3. WORKMEN'S COMPENSATION—KNOWLEDGE OF INJURY—NOTICE OF
   INJURY—LIMITATION OF ACTIONS.

   Limitation periods for giving notice to an employer begin to run
   against an employee's compensation claim only after the em-
   ployee has knowledge or reasonable grounds for knowledge of
   his disability and he has discovered, or by reasonable diligence
   could discover, that his disability may be work related.

4. WORKMEN'S COMPENSATION—INJURY—REPORT OF INJURY—BUREAU
   OF WORKMEN'S COMPENSATION—LIMITATION OF ACTIONS—STAT-
   UTES.

   The statute of limitations shall not run against the claim of an
   injured employee or his dependents or in favor of the employer
   or his insurer, where the employer has been given timely
   notice of an injury or accident within three months after the
   happening thereof and fails, neglects or refuses to report the

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 616, 631.
[2, 3] 82 Am Jur 2d, Workmen's Compensation § 445.
[4] 82 Am Jur 2d, Workmen's Compensation § 489.
[5–8] 82 Am Jur 2d, Workmen's Compensation § 453.

injury to the workmen's compensation bureau (MCLA
418.381[1]; MSA 17.237[381][1]).

5. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—KNOWLEDGE
   OF INJURY—NOTICE OF INJURY—BUREAU OF WORKMEN'S COM-
   PENSATION—REPORT TO BUREAU—LIMITATION OF ACTIONS—
   STATUTES.

   An employer must know that an employee is disabled by illness
   before the statute of limitations will be tolled; mere knowledge
   of the illness is not sufficient where the injury to the employee
   is caused by occupational disease rather than by an accident;
   all limitation statutes are tolled where an employer does have
   notice of an employee injury within 3 months of its occurrence,
   or 120 days where injury is caused by disease, and fails to file a
   report with the Bureau of Workmen's Compensation (MCLA
   418.805; MSA 17.237[805]).

6. WORKMEN'S COMPENSATION—KNOWLEDGE OF INJURY—WORK-RE-
   LATED INJURY—BUREAU OF WORKMEN'S COMPENSATION—REPORT
   TO BUREAU.

   An employer is not required to report an illness to the Bureau of
   Workmen's Compensation unless he knows or reasonably
   should know that the disease is due to causes and conditions
   which are characteristic of and peculiar to the business of the
   employer, and which arise out of and in the course of the
   employment; any other interpretation would lead to absurd
   consequences as employers would be forced to report every
   absence and even trivial symptoms.

7. WORKMEN'S COMPENSATION—KNOWLEDGE OF INJURY—WORK-RE-
   LATED INJURY—NOTICE TO EMPLOYER—BUREAU OF WORKMEN'S
   COMPENSATION—REPORT TO BUREAU.

   Absent any direct suggestion that an employee's illness is related
   to working conditions in an employer's plant, the employer is
   not required to report the illness to the Bureau of Workmen's
   Compensation unless it reasonably should have known from
   other information that what appeared to be a 'common ailment
   was actually a compensable injury.

8. WORKMEN'S COMPENSATION—INJURY—KNOWLEDGE OF INJURY—NO-
   TICE TO EMPLOYER—INJURY REPORTING RESPONSIBILITIES—TESTS
   TO DETERMINE.

   The "knew or reasonably should have known" test applies in
   worker's compensation cases to determine whether an em-
   ployee is required to give notice of his injury to his employer,
   and if an employee knew of an occupational disease and yet

never said anything which might have alerted his employer to the problem, it is the employee who had greater knowledge of the extent of his disease and its probable cause, and therefore, the employee, not the employer, knew or should have known of the employment related cause, and the employee, not the employer, was responsible for reporting the injury.

Appeal from Workmen's Compensation Appeal Board. Submitted June 14, 1977, at Lansing. (Docket No. 29118.) Decided September 20, 1977. Leave to appeal applied for.

Claim by Jimmie L. Meads against General Motors Corporation for worker's compensation benefits for occupational lung disease. Compensation denied. Plaintiff appeals by leave granted. Affirmed.

*Rosenberg & Vigiletti, P. C.,* for plaintiff.

*Munroe & Nobach, P. C.* (by *Richard R. Weiser),* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. FREEMAN,* JJ.

ALLEN, J. Plaintiff Jimmie L. Meads appeals from a 4–1 decision of the Workmen's Compensation Appeal Board (hereinafter WCAB or Appeal Board) which ruled that he was not entitled to compensation payments for an occupational lung disease. MCLA 418.401 *et seq.;*[1] MSA 17.237(401) *et seq.;* GCR 1963, 806.2(1).

The plaintiff was born on July 7, 1900. He first worked for the defendant in 1926. Throughout his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] This opinion will cite the present statutes in Chapter 418 of MCLA. The controlling provisions are substantially unchanged since the plaintiff's disability date in 1965.

employment career, he worked mostly on grinding operations, forming and finishing engine parts. The plaintiff testified that his early jobs were "dry" operations which meant that the air was filled with smoke and particulate debris. The defendant had no witnesses who could testify about conditions during that period.[2]

There was a conflict in the testimony about the conditions during more recent years. Both sides agreed that the operations were now mostly "wet". But plaintiff says that the air was still dirty and dangerous whereas the defendant's witnesses testified that the air was clean by modern factory standards and the purity level far exceeded all government and industry requirements. There is no indication that the plaintiff ever complained about the conditions or told any representative of the defendant that his lungs were being damaged by those conditions.

Plaintiff's employment records show that, between 1954 and 1965, he applied for extended sick leave benefits on five occasions:

| Year | Duration | Cause |
|------|----------|-------|
| 1954 | 1 month | influenza |
| 1960 | 1 week | influenza |
| 1963 | 2 months | influenza; bronchial asthma |
| 1965 | 2 months | pneumonia |
| 1965 | 3 months | pneumonitis; pulmonary emphysema; bronchial asthma |

In every instance, the records indicate that the

---

[2] Plaintiff worked for Chevrolet Division for slightly less than 8 years between 1926 and 1942. That represented nine separate periods of employment, the longest being 2 years and 9 months in 1935–38. He worked for another division of defendant General Motors in 1942–45. He returned to Chevrolet in 1948 and worked continuously until his retirement in 1965. All of the testimony offered by the defendant dealt with post-1950 conditions.

disease was not occupational.[3] The last sick leave ended on December 31, 1965. The plaintiff retired on January 1, 1966. He was then over 65 years old and eligible for normal retirement.

The petition for worker's compensation benefits was filed nearly five years later on November 13, 1970. Plaintiff testified that he did not suspect a connection between his employment and his lung problems until shortly before the petition was filed.

A hearing before an administrative law judge was held on November 1, 1972. The judge found total disability from an occupational disease and ordered weekly payments at the maximum rate. That ruling was reversed by the WCAB on April 23, 1976. The WCAB affirmed the judge's finding that the plaintiff is totally disabled by an occupational disease, but ruled that the plaintiff had forfeited his right to claim benefits because he had failed to give the defendant timely notice of his injury.[4] The plaintiff now appeals to this Court by leave granted.

## I. Disability

We affirm the ruling that the plaintiff is totally disabled by an occupational disease. The board made appropriate findings of fact which are supported by the record even though there is conflicting evidence. We are required to accept those findings of fact. Const 1963, art 6, § 28, MCLA

---

[3] The record entries were made by employees of the defendant. Neither party is able to say who actually made the determinations that the diseases were not occupational. The plaintiff does affirmatively deny that he was ever asked about the possibility of work related causes.

[4] A disease caused by working conditions is an "injury" for purposes of the worker's compensation law. MCLA 418.401; MSA 17.237 (401), MCLA 418.411; MSA 17.237(411).

418.861; MSA 17.237(861). Those findings support the board's ultimate conclusion that the plaintiff is totally disabled by an occupational disease.

## II. EMPLOYEE'S NOTICE TO EMPLOYER

The WCAB denied benefits because it ruled that the plaintiff had failed to give the defendant timely notice of his injury as required by the statutes. MCLA 418.381(1); MSA 17.237(381)(1) states in part:

> "(1) No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury has been given to the employer within 3 months after the happening thereof and unless the claim for compensation with respect to the injury, which claim may be either oral or in writing, has been made within 6 months after the occurrence of the same; * * * ."

In this case, the 3-month notice period is increased to 120 days by MCLA 418.441; MSA 17.237(441):

> "The requirements of notice of occupational disease and death resulting therefrom and the requirements as to the bringing of proceedings for compensation for disability or death resulting from such occupational disease shall be the same as required in chapter 3, except that the notice shall be given to the employer within 120 days after the disablement."

The WCAB found that plaintiff became disabled because of his occupational lung disease on October 1, 1965. *Lewis v Chrysler Corp,* 394 Mich 360; 230 NW2d 538 (1975), held that the various limitation periods begin to run against an employee's claim only after:

"(1) the employee has knowledge or reasonable grounds for knowledge of this disability; and

(2) the employee has discovered or by reasonable diligence could discover that his disability may be work-related." 394 Mich at 369.

See also *Tillotson v Penn-Dixie Cement Corp,* 47 Mich App 427; 209 NW2d 611 (1973).

The WCAB ruled that both *Lewis* requirements were met as of October 1, 1965. We affirm that ruling and its underlying findings of fact. Const 1963, art 6, § 28; MCLA 418.861; MSA 17.237(861).

### III. EMPLOYER'S NOTICE TO BUREAU OF WORKERS' COMPENSATION

Assuming *arguendo* our affirmance of the WCAB's rulings in Section II of this opinion, the plaintiff nonetheless argues that his failure to give formal notice is excused by the last sentence of MCLA 418.381(1); MSA 17.237(381)(1) which states:

"In a case in which the employer has been given notice of the happening of the injury or has notice or knowledge of the happening of the accident within 3 months after the happening of the same, and fails, neglects or refuses to report the injury to the bureau as required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee or his dependents, or in favor of the employer or his insurer, until a report of the injury has been filed with the bureau."

Plaintiff argues that the sick leave records described earlier in this opinion constituted sufficient notice to the defendant and that the formal notice and claim filed in 1970 were timely since the defendant had never notified the Bureau of Workmen's Compensation (hereinafter Bureau) about

the plaintiff's injury. The WCAB rejected that argument by concluding that:

"Nor may we cavalierly say that defendant knew as much as plaintiff, and that failure to report to the Bureau in accord with *Norris v Chrysler,* 391 Mich 469, tolls the statute as regards plaintiff's otherwise tardy notice and claim. The employer knew it had an employee with "bronchial asthma, pneumonitis, and pulmonary emphysema" who had filed for sick leave. Plaintiff does not claim to have told anyone in supervision about claimed causal relationship. This is not enough to put the employer on notice, per *Norris,* supra, unless we are to erroneously assume that *Norris* overturned its antecedents * * * ." (WCAB slip opinion p 14.)

The WCAB made its decision after interpreting *Norris v Chrysler Corp,* 391 Mich 469; 216 NW2d 783 (1974). Our task is to decide whether the board interpreted *Norris* correctly. We also must consider *Krol v Hamtramck,* 398 Mich 341; 248 NW2d 195 (1976), decided after the WCAB released its opinion.

The employee in *Norris* was struck by a car as he crossed the street which separated his employer's plant from the parking lot in which he had left his car. A witness immediately informed a senior plant security officer. A co-worker immediately told the employee's foreman about the accident. The Supreme Court held that the employer had sufficient notice to be required to file a report with the Bureau or risk an indefinite tolling of the limitation periods. The defendant had argued that, although it knew of the accident, the failure to report should be excused because it did not know that the injuries might be compensable. That argument was rejected.

"Defendant argues that under the state of the law at that time it did not receive notice of a compensable injury and therefore was not required to report. There are cases which do state that the employer must be informed of a 'compensable' accident. However, close examination of the cases will disclose that this is a result of imprecise use of statutory language. The notice given must be sufficient to make the employer aware that an injury has been sustained. If, after inquiry, the employer does not believe the injury to be compensable, it need not report the accident. However, in not reporting the accident, the employer assumes the risk that the injury will be found to be compensable. If such a determination occurs, the employer's penalty is a suspension of statutory limitations." 391 Mich at 477.

But the *Norris* opinion goes on to distinguish *Williams v Chrysler Corp,* 29 Mich App 398; 185 NW2d 403 (1971), which denied benefits because the plaintiff failed to give timely notice. In *Williams,* the facts were very similar to *Norris* except that the employer knew only that the employee had been struck by a car; it did not know where or under what circumstances the accident had occurred. *Norris* distinguished *Williams* as follows:

"The facts of the instant case are quite different. The chief guard was told immediately after the incident. The foreman was told the same night. The company was put on notice that the accident occurred while plaintiff was reporting to work. We conclude that such notice was sufficient." 391 Mich at 479–480.

It is very difficult to reconcile this last quotation with the earlier statement that the employer need only know that an injury has been sustained. 391 Mich at 477. In *Williams,* the foreman attended the employee's funeral. He knew that the employee had died in an auto accident. He obviously knew that the employee had suffered an "injury".

Yet *Norris* did not overrule *Williams;* rather it distinguished the *Norris* facts because that employer knew that the employee had been injured while crossing a street adjacent to the plant on his way to report for work. This additional information served only to suggest that the injury might be compensable; without it, the employer still would have known "that an injury ha[d] been sustained". 391 Mich at 477. The only conclusion that can be drawn from this apparent conflict is that parts of *Norris* are dicta and that something more than bare notice of an injury is required. Otherwise, *Norris* and *Williams* cannot stand together.

Both *Norris* and *Williams* were accidental injury cases; thus both employers indisputably had notice that, on a date certain, their employees suffered disabling injuries. Occupational disease cases are more complex because everyone occasionally suffers from minor illnesses which are "disabling" in the sense that a few work days are missed. But those illnesses are not compensable under workers' compensation and we cannot believe that the Supreme Court intends to require a report to the Bureau everytime an employee takes a sick day. Any such system would place impossible burdens on employers and the Bureau. We doubt that the Supreme Court intended such a result.

However, it is not enough to merely draw a disease/accidental injury distinction between the present case and *Norris*. That easy distinction was ruled out by the more recent decision in *Krol v Hamtramck, supra.* The employer in *Krol* was notified that its employee had died from "Brain necrosis, questionable etiology". 398 Mich at 344. The employee had worked for ten years on indoor spray painting work, thus exposing himself to

paint and solvent fumes which are known to cause brain disorders. Noting that the employer had notice of "death and the cause of death",[5] the Court relied on *Norris* and ruled that the failure to file a report with the Bureau tolled the limitation periods and excused the surviving spouse's failure to give timely proper notice.

*Krol* clearly applies *Norris* to disease cases. But exactly how far that application extends is still an open question.

The disability in *Krol* was death. The impact of that event leads to an intuitive feeling that *Krol* has more in common with the accidental injury cases than it does with cases of chronic illnesses like that involved in the present case. The fact that disability arises in a single dramatic event makes it much easier to excuse the failure to give formal notice to the employer.

Also, where the "injury" to the employee is caused by an occupational disease rather than an accident, the employer must know that the employee is disabled by the illness before the statute of limitations will be tolled; mere knowledge of the illness is not sufficient. *Tomasini v Youngstown Mines Corp,* 366 Mich 503; 115 NW2d 387 (1962), *Carter v Kelsey-Hayes Co,* 386 Mich 610; 194 NW2d 326 (1972). Disability in *Krol* was obvious. Defendant General Motors argues that the present case is distinguishable because it did not know that plaintiff Meads was disabled when he opted for normal retirement. He had taken extended sick leaves on several past occasions but had always returned to work. Defendant argues that it

---

[5] 398 Mich at 347. This use of the word "cause" is somewhat confusing in the context of a worker's compensation case. It could mean either knowledge that the employee suffered from a diseased brain or knowledge [should have known] that the disease was caused by paint and solvent fumes.

had no reason to suspect that the final leave period was any different.

The problem with that argument is that both the administrative law judge and the Appeal Board found that the plaintiff became disabled on the first day of his sick leave and had never recovered. Even if the defendant erroneously thought that the plaintiff recovered as of his retirement date, it still knew that he had not been able to work for the preceding three months. He clearly was disabled. If the disability was of a type that the defendant was required to report, then *Norris* and *Krol* would require us to hold that the statute of limitations never ran against the claim.

MCLA 418.381(1); MSA 17.237(381)(1) states that all limitation statutes are tolled if an employer has notice of an "injury" within 3 months (120 days where the "injury" is caused by a disease) of its occurrence and fails to file a report with the Bureau as required by MCLA 418.805; MSA 17.237(805) and the Bureau's Rule 408.31.

Did defendant General Motors have notice of an "injury" within 120 days after it occurred? For the reasons outlined below, we hold that it did not have the required notice and affirm the Appeal Board ruling that the plaintiff's claim is barred by the limitation statutes.

The plaintiff in *Norris v Chrysler, supra,* was injured in an auto accident. The employer knew of the injury almost immediately. *Krol v Hamtramck, supra,* and the present case are more complicated because there are no traumatic injuries. We deal here with the special definition of "personal injury" which converts certain illnesses into "injuries" for purposes of the workers' compensation act. See MCLA 418.411; MSA 17.237(411) and MCLA 418.401(c); MSA 17.237(401)(c) which states:

" 'Personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

As we read MCLA 418.381(1); MSA 17.237(381)(1) in combination with MCLA 418.401(c); MSA 17.237(401)(c), an employer is not required to report an illness to the Bureau unless he knows or reasonably should know[6] that the disease is "due to causes and conditions which are characteristic of and peculiar to the business of the employer" and which arise "out of and in the course of the employment". Any other interpretation would lead to absurd consequences as employers would be forced to report every absence and even trivial symptoms. Moreover, this interpretation is consistent with either of the two conflicting statements in *Norris v Chrysler, supra,* since both of those analyses begin with assumed knowledge of an injury. When dealing with an illness, knowledge of an employment-related cause is a prerequisite to knowledge of an injury. Defendant General Motors obviously knew that the plaintiff was sick. But, it did not know that the sickness was an "injury" which should have been reported to the Bureau.

Defendant knew that plaintiff was a 65-year-old man who opted for normal retirement at the end of a 3-month sick leave. The diagnosis of the illness which necessitated the sick leave was "pneumonitis; pulmonary emphysema; bronchial asthma". There never was any suggestion at that time by the plaintiff or anyone else that the illness

---

[6] *Compare Lewis v Chrysler, supra.*

might have been caused by working conditions. Contrast *Carter v Kelsey-Hayes, supra.*

Absent any direct suggestion that the plaintiff's illness was related to working conditions in the defendant's plant, the defendant was not required to report the illness to the Bureau unless it reasonably should have known from other information that what appeared to be a common ailment was actually a compensable "injury".

The plaintiff worked on grinding operations, a factor which might suggest the danger of pulmonary diseases. However, those operations had been "wet" operations for most of the plaintiff's career. Use of that technique greatly reduces the amount of irritants in the air and consequently reduces the danger of respiratory problems.

The diagnosis of the plaintiff's last sick leave illness is also important. Each of the three illnesses mentioned, pneumonitis, pulmonary emphysema and bronchial asthma, is common to the general population—especially older persons—and would usually be classed as an "ordinary disease of life" for which compensation is not payable. MCLA 418.401(c); MSA 17.237(401)(c). Persons who work in polluted atmospheres would be more likely to suffer these ailments. But, as noted in the preceding paragraph, the plaintiff's working conditions were not especially bad.

The plaintiff's medical history is also interesting. He had taken sick leaves on four previous occasions. The diagnoses on those occasions were: (1) influenza; (2) influenza; (3) influenza and bronchial asthma; (4) pneumonia. Influenza is caused by a virus and thus would usually be unrelated to particulate contamination of the working atmosphere. But it is a respiratory ailment. The plaintiff's history indicates three serious episodes of

influenza within the ten years before his retirement. It would be reasonable to theorize that his respiratory system was damaged by those attacks.

The preceding paragraphs summarize the information which was available to the defendant. We affirm the Appeal Board finding that the defendant was not required to report to the Bureau. We would affirm whether the notice issue is treated as a question of fact, *Carter v Kelsey-Hayes, supra,* a question of law, *Norris v Chrysler, supra,* and *Krol v Hamtramck, supra,* or perhaps a question of jural relationship, *Deziel v Difco Laboratories, Inc,* 394 Mich 466; 232 NW2d 146 (1975). Any other result would create an impossible situation for employers and for the Bureau itself.

We believe that *Krol v Hamtramck, supra,* though also a disease case, may properly be distinguished on at least three grounds.[7] First, the disease suffered in *Krol,* a suddenly disabling and fatal brain necrosis, is not commonly experienced by the general public. Second, Krol's long career as an indoor spray painter who also made extensive use of solvents for removing paint might reasonably suggest a causal relationship with an unusual brain disorder. Third, Krol died from his illness whereas the plaintiff in the present case is still alive and reasonably active at age 77, almost 12 years after the onset of his disability.

The "knew or reasonably should have known" test which we have adopted is obviously similar to the one which *Lewis v Chrysler, supra,* applies to determine whether the employee was required to

---

[7] *Krol* was decided after the briefs were filed in this case. Because neither party requested oral argument, we were not able to question them directly about the applicability of *Krol.* We therefore wrote to the parties requesting supplemental briefs directed to that question and two others. Those briefs were timely filed. We have reviewed them—and also the Supreme Court briefs filed in the *Krol* case—in reaching our determination that *Krol* does not require reversal here.

give notice of his injury to the employer. Since we have affirmed the Appeal Board finding that plaintiff Meads knew or should have known of the cause of his disability in 1965, we are obligated to explain why we also have affirmed the Appeal Board finding that defendant General Motors did not have the same knowledge. In our opinion, the key differentiating factor is Meads' testimony that he knew for 10 or 15 years that the air in the plant was damaging his lungs and making him cough. This testimony shows that he was acutely aware of the causal relationship; he probably could sense increased difficulty in breathing when he entered the plant. Yet he never said anything to any representative of the defendant which might have alerted the defendant to the problem.

On balance, we are convinced that the plaintiff had greater knowledge of the extent of his disease and its probable cause. Hence our conclusion that the plaintiff—but not the defendant—knew or should have known of the employment related cause.

The order of the Appeal Board is affirmed.