DEZIEL v DIFCO LABORATORIES, INC

BAHU v CHRYSLER CORPORATION

MacKENZIE v FISHER BODY DIVISION, GENERAL MOTORS
CORPORATION

Docket Nos. 54825, 54879, 55072. Argued June 4, 1974 (Calendar Nos.
1–3).—Decided August 19, 1975.

> Mary Deziel made a claim for workmen's compensation against
> her employer, Difco Laboratories, Inc., asserting she cannot
> work because of pain in the back of her eyes, anxiety, head-
> aches, tiredness, and occasional dizziness, nausea and tightness
> in the chest. No physical cause for these symptoms has been
> found. The referee awarded compensation, finding that an
> accident at work aggravated a pre-existing latent mental disor-
> der culminating in total occupational disablement. The Appeal
> Board reversed the referee. The Court of Appeals, Bronson,
> P. J., and Quinn and Danhof, JJ., denied leave to appeal
> (Docket No. 16185). Plaintiff appeals.

> Yusuf Bahu made a claim for workmen's compensation against
> his employer, Chrysler Corporation, alleging inability to work
> because of pain in his back, neck and arm. At the hearing,
> plaintiff's psychiatrist said that Bahu's physical pain was
> caused by pre-existing personality factors plus the precipitating
> events of a stressful job situation at Chrysler. Defendant's
> psychiatrist said the pain was not caused by or aggravated by
> his work at Chrysler, but rather that Bahu's personality
> makeup was fragile when he came to Chrysler and he subcons-
> ciously attached his life's troubles to the event of the work-
> related injury. The referee awarded compensation. The Appeal
> Board reversed. The Court of Appeals, J. H. Gillis, P. J., and
> Bashara and O'Hara, JJ., denied leave to appeal (Docket No.
> 16600). Plaintiff appeals.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 483.

[2] 58 Am Jur, Workmen's Compensation § 470.

[3–5] 58 Am Jur, Workmen's Compensation §§ 247, 255.

[6, 7] 58 Am Jur, Workmen's Compensation § 250.

[8, 9] 58 Am Jur, Workmen's Compensation §§ 527, 530.

Harold K. MacKenzie made a claim for workmen's compensation against his employer, General Motors Corporation, Fisher Body Division. Plaintiff's psychiatrist testified that MacKenzie suffered from a long-standing personality defect of compulsive perfectionism that centered on his job, and that eventually the job pressures disabled him. Defendant's psychiatrist testified that it was MacKenzie's perfectionistic need in conflict with the impairments of aging that produced his anxiety and that although MacKenzie perceived the stresses of the job as causing his anxiety those stresses were usual occurrences and did not cause his emotional problems. The referee awarded compensation finding that, although the stresses of the job were not great enough to cause ill effects in an average person, the stress did cause MacKenzie to become disabled. The Appeal Board reversed. The Court of Appeals, R. B. Burns and Van Valkenburg, JJ., affirmed (Bronson, P. J., dissenting) (48 Mich App 175; 210 NW2d 357 [1973] [Docket No. 14695]). Plaintiff appeals.

The Supreme Court granted leave to appeal and directed that the cases be argued and submitted consecutively because they all concern aspects of the compensability of psychiatric injuries. *Held:*

1. A subjective standard, the effect of the work environment on the claimant, is used in workmen's compensation psychiatric disability cases when determining whether the injury arose out of the employment.

2. If a workmen's compensation claimant is disabled on account of his employment aggravating, accelerating or combining with some internal weakness or disease he is entitled to compensation; there is no need to seek any further connection between the work and disability.

3. A disabled workmen's compensation claimant who has suffered a personal injury is not required to prove a "causal" relationship between his injury and his work; a sufficient connection between the injury and the employment is established if the employment aggravated or accelerated or combined with some internal weakness to produce the injury.

Each case is remanded to the Workmen's Compensation Appeal Board for further proceedings.

M. S. Coleman and J. W. Fitzgerald, JJ., dissented on the grounds that the Court is constitutionally bound to accept the appeal board's fact findings supported by evidence that there was no causal connection between claimants' employment and alleged "psychiatric injuries" for which they sought compensa-

tion and no aggravation of pre-existing conditions; and that the consumer never was and should not now be expected to bear the costs of a claimant's need to gratify his or her psyche by blaming something or someone for personal problems.

48 Mich App 175; 210 NW2d 357 (1973) reversed.

Opinion of the Court

1. Workmen's Compensation—Constitutional Law—Findings of Fact—Jural Relationship.

The facts upon which a jural relationship is to be predicated are "ordinary facts" and the jural relationship itself is deemed a "holding", "ruling", or "conclusion" of law; the constitutional provision that findings of fact in workmen's compensation proceedings are binding upon the Supreme Court if supported by any evidence addresses itself to the "ordinary facts" upon which the jural relationship of right to compensation in the claimant and liability for it in the employer is based, and not to the jural relationship itself (Const 1963, art 6, § 28).

2. Workmen's Compensation—Findings of Fact—Legal Principles.

What facts are to be determined by the fact finder in a workmen's compensation case are controlled by principles of law which are set forth in statutes as interpreted by the Court.

3. Workmen's Compensation—Injuries—Compensability—Pre-existing Condition—"Out of" Employment.

In workmen's compensation cases involving pre-existing conditions the legal principle to be applied in determining whether a disability arose "out of" employment is whether the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability (MCLA 418.301).

4. Workmen's Compensation—Injuries—Compensability—Pre-existing Condition.

Three questions of fact and law must be resolved by the decision maker in determining whether a disability involving pre-existing condition arose out of employment: (1) Is the claimant disabled? (2) If so, is the claimant disabled on account of some personal injury? (3) Did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury? If affirmative answers to those questions are supported by the record, the claimant as a matter of law had a personal injury which arose out of employment and compensation must be awarded.

5. WORKMEN'S COMPENSATION—DISABILITY—PRE-EXISTING CONDITION
—"OUT OF" EMPLOYMENT—CAUSAL RELATIONSHIP.

A disabled workmen's compensation claimant who has suffered a
personal injury is not required to prove a "causal" relationship
between his injury and his work; a sufficient connection be-
tween the injury and the employment is established if the
employment aggravated or accelerated or combined with some
internal weakness to produce the injury.

6. WORKMEN'S COMPENSATION—PSYCHIATRIC DISABILITY—"OUT OF"
EMPLOYMENT—SUBJECTIVE STANDARD.

The effect of the perceived work environment on the claimant, a
subjective standard, is used in workmen's compensation psychi-
atric disability cases when determining whether the injury
arose out of the employment, not the objective standard of the
effect of the actual work environment on the average worker
(MCLA 418.301).

DISSENTING OPINION

M. S. COLEMAN and J. W. FITZGERALD, JJ.

7. WORKMEN'S COMPENSATION—PSYCHIATRIC DISABILITY.

*Although the multitudinous forces within a personality may
require a person to seek a way of life gratifying to his or her
psyche, the consumer of a product never was and should not be
expected to bear the cost of this gratification by the payment of
workmen's compensation benefits for psychiatric disability.*

8. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDINGS OF
FACT—CONSTITUTIONAL LAW.

*Findings of fact in workmen's compensation proceedings are
conclusive if supported by any evidence presented, and the
scope of appellate review does not entail* de novo *review of
workmen's compensation cases. (Const 1963, art 6, § 28; MCL
418.861.)*

9. WORKMEN'S COMPENSATION—CAUSAL RELATIONSHIP—FINDING OF
FACT.

*Findings of the Workmen's Compensation Appeal Board as a
matter of fact that there was no causal connection between
claimants' employment and psychiatric "injuries" for which
they sought compensation should not be reversed on appeal
where each case involves a factual situation that invites debate
and there was evidence to support the findings.*

*Kelman, Loria, Downing & Schneider,* for plaintiff Deziel.

*LeVasseur, Werner, Mitseff & Brown* (by *Grahame G. Capp),* for defendants Difco Laboratories, Inc., and Michigan Mutual Liability Company.

*Kelman, Loria, Downing & Schneider* (by *Donald W. Loria* and *Rodger G. Will),* for plaintiff Bahu.

*Hayim I. Gross* and *Lacey & Jones,* for defendant Chrysler Corporation.

*Levine & Benjamin, P. C.,* for plaintiff MacKenzie.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Leonard E. Nagi [Ross L. Malone,* of counsel]), for defendant General Motors Corporation, Fisher Body Division.

Amicus Curiae: *Robert D. Thompson,* for Michigan Self-Insurers Association.

T. G. KAVANAGH, C. J. We granted leave in these cases and directed that they be argued and submitted consecutively because they all concern aspects of the same problem which we perceive to be of importance in the workmen's compensation law— the compensability of psychiatric injuries.

The facts in each case differ.

## DEZIEL

Mary Deziel, 39 at the time of suit, began working for Difco in 1968 handling test tubes, mixtures and various chemicals. On January 23, 1969 a test tube she was filling broke, causing glass to get into

her eye. She was treated the next day and returned to work. On April 24, 1969 a test tube filled with iodine slipped from her hand and hit the table, splattering iodine around her eyes. She has not returned to work since. She made claim for compensation asserting she cannot work because of pain in the back of her eyes, anxiety, headaches, tiredness, and occasional dizziness, nausea and tightness in the chest. No physical cause for these symptoms has been found.

In her testimony before the referee Deziel denied being treated for headaches and nervousness prior to working for Difco.

However, prior to her employment with Difco, Deziel lived and worked in Ontario where she was treated by Dr. Brewer, who was deposed by Difco after the referee's decision. Brewer testified that he had treated Deziel for various ailments including headaches, anxiety, and tiredness but did not recall whether she had complained of eye problems.

The referee accepted and adopted the disease theory of Difco's psychiatrist, Dr. Forrer, namely that Deziel has always suffered from an obsessive-compulsive character which attached to the eye injury and developed into a psychosis, called a schizophrenic reaction. Coupled with that disease theory, the referee found that the iodine splashing "aggravated the pre-existing latent mental disorder" culminating into a total occupational disablement. He awarded compensation.

The Appeal Board in a unanimous opinion reversed the referee, holding that Deziel had not met the burden of proof to show her ailments were associated with her work, because with the exception of her eye ailments she had suffered the same symptoms since 1962.

BAHU

Bahu, 35 at the time of suit, was hired by Chrysler in 1967. In 1968 he worked at a stamping machine lifting and moving 1500 seven-pound parts a day from an overhead conveyor to large tubs. From September 19, 1968 through October 7, 1968 he was off work with back pains and was voluntarily paid workmen's compensation benefits. Bahu returned to work and continued to complain of pain in his back, neck, and arms and of an inability to move one of his arms. He asked for lighter work but was refused. He quit on January 4, 1969. From January 29, 1969 through part of 1970 he worked at other jobs, but quit because of pain in his back, neck and arm.

At the hearing before the referee on his claim for compensation, two psychiatrists testified. Plaintiff's psychiatrist, Dr. Dorsey, said that Bahu's physical pain was caused by pre-existing personality factors plus the precipitating events of a stressful job situation at Chrysler.

Defendant's psychiatrist, Dr. Forrer, testified that Bahu was in pain. Forrer said that the pain was not caused by or aggravated by his work at Chrysler, but rather that Bahu's personality makeup was fragile when he came to Chrysler and he subconsciously attached his life's troubles to the event of the work-related injury. In the words of Dr. Forrer the work injury was "a convenient hook on which he can attach causation for troubles of all kinds".

The referee, without stating any reasons, found that Bahu received a compensable personal injury, and awarded compensation from January 5, 1969 until further order.

The Appeal Board in a four to three opinion was

not persuaded that Bahu's disability was causally related to his work for Chrysler. The dissenting members would have awarded compensation, finding that the requirement of job relationship was satisfied because the job provided the hook on which Bahu could hang his troubles.

## MacKenzie

MacKenzie, 65 at the time of suit, began working for General Motors in 1924 at the age of 15. In 1965 he took an early retirement at age 56. For about five years prior to his retirement he worked on the day shift in a General Motors Fisher Body salvage department. His job was to count, keep track of, and ship back to vendors red-tagged defective parts. During his last two or three years with General Motors he became irritable and nervous because the afternoon shift would take defective parts from his department and install them on cars in the assembly line. This caused him to worry about the safety of new cars and required him to recount the remaining parts and account to his supervisors for the missing parts. In addition, the poor work habits of his co-worker required MacKenzie to work harder, which added to his anxiety.

He made claim for compensation. At the hearing before the referee, MacKenzie's psychiatrist, Dr. Dreyer, testified that MacKenzie suffered from a long-standing personality defect of compulsive perfectionism that centered on his job, and that eventually the job pressures disabled him. This was subjective analysis based on MacKenzie's view of his job.

General Motor's psychiatrist, Dr. Fink, testified that it was MacKenzie's perfectionistic need in conflict with the impairments of aging that pro-

duced his anxiety and that although MacKenzie perceived the stresses of the job as causing his anxiety those stresses were usual occurrences and did not cause his emotional problems. This was an objective analysis based on the normal worker's view of MacKenzie's job.

The referee awarded compensation finding that, although the stresses of the job were not great enough to cause ill effects in an average person, the stress did cause MacKenzie to become disabled.

The Appeal Board in its five to two majority opinion reversed the referee and rejected the subjective analysis in favor of an objective analysis and ruled that an actual mental injury caused by a claimant's perception of his work environment is not compensable when that environment is not injurious to the average worker.

Two members of the board dissented and would have awarded compensation by applying the subjective analysis and finding that the on-the-job stress aggravated MacKenzie's pre-existing personality disorder.

The Court of Appeals majority did not speak to whether a subjective or objective test should be used. It affirmed, holding only that there was evidence to support the board's findings of fact.

Judge BRONSON dissented, stating that *Carter v General Motors Corporation,* 361 Mich 577; 106 NW2d 105 (1960), requires that a subjective analysis must be employed in deciding the issue of causation.

We are not satisfied that the Appeal Board has properly construed the law as it applies to disabilities of the character involved in these cases and accordingly must set aside its decisions.

In the first place we consider it in order to

discuss a claim that is asserted in each of these cases, *viz.,* that the ruling by the Appeal Board is a finding of fact which is made binding upon us if supported by any evidence by Const 1963, art 6, § 28.

What is always at issue in these cases is a "jural relation"—a right to compensation in the claimant, and a liability for it in the defendant. As pointed out in 1 Wigmore on Evidence (3rd ed), § 1, p 2, "[t]he material on which this claim of the plaintiff rests, if successful, is composite".

This means simply that in determining any jural relationship, the facts upon which such relationship is to be predicated are "ordinary facts" and the jural relationship itself (which in a very real sense is also a fact) is deemed a "holding", "ruling", or "conclusion" of law.

It is to the former, the facts upon which the jural relationship is based—"ordinary facts"—that the constitution addresses itself, and not the latter —which are called legal principles. See, generally, Wigmore, *supra, "(a) Law and Fact, distinguished".*

What facts are to be determined by the fact finder are controlled by principles of law. These principles are set forth in statutes as interpreted by the Court.

The Workmen's Compensation Act, MCLA 418.301; MSA 17.237(301), requires that injuries to be compensable must arise "out of and in the course of" employment. In cases such as these which are asserted to involve pre-existing conditions the question of whether a disability arose out of the employment is resolved by the fact finder only upon inquiry regarding the work connection. The legal principle to be applied is that set forth by Professor Larson in § 12.20 of his treatise, Workmen's Compensation Law, at 3-231:

whether "the employment aggravated, accelerated, or combined with the disease or infirmity to produce the * * * disability".

To apply that principle the decision maker must resolve three questions of fact and law:

1) Is the claimant disabled?

2) If so, is the claimant disabled on account of some "personal injury"?

3) Did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury?

If those questions are answered in the affirmative and supported by the record, the decision maker must then find as a matter of law that the claimant had a personal injury, which arose out of the employment, and that compensation must be awarded.

By the same token, if there is support for a negative answer to any of the questions, compensation may not be awarded. With this in mind we examine the cases independently.

## DEZIEL

In *Deziel,* the Appeal Board explained its holding in this manner:

"Mainly by her own testimony did the plaintiff prevail before the Referee, proving a psychiatric disability associated with her work. Since the decision, additional testimony in the nature of a deposition by Dr. Brewer has become a part of the record. This deposition shows, with substantial weight, that plaintiff had been suffering from the same symptoms since 1962 and periodically thereafter which is most impressive to the point that her disability was not causally connected with her work. Further, her credibility is impaired by the fact she denied suffering such disability prior to her employ-

ment with the defendant which is completely contro-
verted by the doctor's deposition.

"(11) The only discrepancy between her symptoms of
1962 and thereafter and her allegations of disability
upon which she predicates her petition for benefits is
pain behind the left eye. The plaintiff has not met the
burden of proof to show her ailments are associated
with her work or that her injury precipitated her
present, allegedly disabled condition.

"The order of the referee is reversed."

From our reading of this, it is impossible for us
to determine whether they addressed themselves
to the appropriate question. If they did not, their
holding as a matter of law would be erroneous.

We remand for clarification, retaining jurisdic-
tion.

The phrase "allegedly disabled condition" in the
last full paragraph quoted indicates that the board
may have concluded that the claimant was not
disabled despite the testimony of both psychiatrists
which seem to lead to the conclusion that she is
disabled. The first paragraph, however, indicates
that the board accepted the evidence of disability,
but concluded the disability was not occasioned by
her work.

The applicable law is clear. If the claimant is
disabled on account of her employment aggravat-
ing, accelerating or combining with some internal
weakness or disease she is entitled to compensa-
tion.

There is no need to seek any further connection
between the work and disability.

## BAHU

In *Bahu* we have the same problem as *Deziel.*
The board concluded that it was not persuaded

"that plaintiff has a disability causally related to his work for the defendant".

We are unable to discern from the board's opinion whether they found that *Bahu* was in fact disabled.

We remand for the same fact finding ordered in *Deziel* and point out that a disabled plaintiff who has suffered a personal injury is not required to prove a "causal" relationship between his injury and his work. A sufficient connection between the injury and the employment is established if the employment aggravated or accelerated or combined with some internal weakness to produce the injury.

## MacKenzie

In *MacKenzie* the board's majority impliedly found that plaintiff was disabled by a mental condition that amounted to a personal injury.

It is not clear why the majority denied compensation. They may have found that the claimant's disability had no connection with his work. The majority said:

"In this case, plaintiff MacKenzie was disabled by something from within—that internal cause of his disability being a personality disorder dating back to his youth."

On the other hand they may have denied compensation because they believed that a work-related personal mental injury in order to be compensable must result from an actual stressful situation. In their next sentence the majority stated:

"We know of no case law that would permit compensation for plaintiff's *perception* of a work environment as

injurious, when in fact that perception does not square with fact and the environment is shown not to be injurious." (Emphasis in the original.)

Such an objective standard (*i.e.*, the effect of the actual work environment on the average worker) is not the standard to be employed. In workmen's compensation psychiatric disability cases a subjective standard (*i.e.*, the effect of the perceived work environment on the claimant) is used when determining whether the injury arose out of the employment.

In *Carter v General Motors*, 361 Mich 577; 106 NW2d 105 (1960), this Court affirmed an award of compensation to an employee whose disability resulted from his pre-existing mental disturbance and ordinary assembly line pressures.

The Court in *Carter* applied a subjective test, saying at 585:

" * * * his disability was caused by emotional pressures produced by production line employment not shown by him to be unusual in any respect,—that is, not shown by him to be any different from the emotional pressures encountered by his fellow workers in similar employment."

The instant case is on all fours with *Carter*. The fact that MacKenzie's mental condition became acute because of the abnormal perception of his employment does not make the connection with that employment any less real for MacKenzie.

We remand in this case for clarification. Did MacKenzie's employment aggravate, accelerate, or combine with his personality disorder to produce his injury or was his injury totally unrelated to his employment?

CONCLUSION

We have remanded all three cases to the Workmen's Compensation Appeal Board for clarification, because in each the board denied compensation without clearly saying why it did so. In order for us to review the board's application of law we must know what facts the board used in reaching its conclusion.

We recognize that psychiatric injury cases are fraught with the danger of malingering. However, the employer is entitled to present evidence of malingering, and from such evidence the fact finder may conclude that the claimant is in fact malingering and therefore not disabled and not entitled to compensation. And, of course, if there is positive and convincing evidence to justify such a conclusion it will be affirmed.

Each case is remanded to the Workmen's Compensation Appeal Board for further proceedings not inconsistent with this opinion. Jurisdiction is retained.

No costs as no party prevailed in full.

WILLIAMS and LEVIN, JJ., concurred with T. G. KAVANAGH, C. J.

M. S. COLEMAN, J. *(to affirm).* Each of these cases involve latent personality disorders going back to childhood. Each plaintiff argues that some incident or relationship at work caused the disability. In fact, there was no physical basis for the complaint. Each chose a situation at work to blame for life's troubles and so comfortably could claim disability.

1. One was a "perfectionist" who was upset by the less than perfect performance of a neighboring worker. He took early retirement and seeks in addition workmen's compensation for his "disabil-

ity". His own personality and the process of aging caused his problem—or so was the expert testimony. (MacKenzie.)

2. One attributed headaches, tension, anxiety and dizziness to a splattering of iodine which occurred when she dropped a test tube. There was no physical damage and she was told to return to work the next morning. She testified that she had never had such problems, never had received medication, treatment or hospitalization for such, that her problems were caused by her accident at Difco. Because she had lived in Canada all of her life (and continues to live there) excepting the months here involved,[1] inquiry was commenced in Canada, but *after* the referee's hearing. Before the Workmen's Compensation Appeal Board (WCAB), it was learned for the first time that she had been treated, medicated and hospitalized over the past for these same complaints. (Deziel.)

3. For no physical reason, plaintiff complained of back problems. He seeks workmen's compensation from Chrysler. He worked short periods of time at different places before and after this employment and completed a beautician's course but did not pursue work in that field. Expert testimony was to the effect that plaintiff experienced "cultural dissonance" upon coming to this country from the Near East. He married an ex-nun, a college graduate (he had no college education) and they "get along together because he assumes the position of a child and she assumes the position of the de facto parent."[2] Plaintiff's failure to use his hairdressing training is enlightening to his general disinclination to work. A psychiatrist explained that, instead of saying, "I made a wrong choice and I don't like

---

[1] Plus a few weeks.

[2] Testimony of Dr. Forrer.

this," he says, "I can't lift my arms up to do it."
He "finds a reason not to do it, but not the true
reason". (Bahu.)

In each case WCAB found no causal connection,
no aggravation of a pre-existing condition. We
agree that there is evidence to support these rul-
ings.

We also would find that, although the multitudi-
nous forces within a personality may require a
person to seek a way of life gratifying to his or her
psyche, the consumer of a product never was and
should not be expected to bear the cost of this
gratification (real though the need must be).

We would affirm.

## The Constitution

Const 1963, art 6, § 28 provides that "in the
absence of fraud unless otherwise provided by law"
findings of fact "in workmen's compensation pro-
ceedings shall be conclusive". Also see MCLA
418.861; MSA 17.237(861).

## The Common Law

The case law also holds that findings of fact are
conclusive if supported by any evidence presented.
*Johnson v Vibradamp Corp,* 381 Mich 388; 162
NW2d 139 (1968); *Hlady v Wolverine Bolt Co,* 393
Mich 368; 224 NW2d 856 (1975).

Each of the cases discussed involves a factual
situation that invites debate. The scope of appel-
late review in this state does not entail *de novo*
review of workmen's compensation cases.

However, the majority opinion, utilizing a se-
mantic sleight of hand, has managed to rehear the
cases and fault the WCAB for having found as a

matter of fact that there is no causal connection between the plaintiffs' employment and their "injuries".

Instead, my colleagues replace the long standing "causal relationship" rationale[3] with a new test based on a legal principle credited to Professor Larson. The majority states:

"To apply that principle the decision maker must resolve three questions of fact and law:
"1. Is the claimant disabled?
"2. If so, is the claimant disabled on account of some 'personal injury'?
"3. Did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury?"

Steps one and two above must always be fulfilled before a claimant qualifies for benefits. However, concerning step three, Professor Larson in § 12.20 of his treatise, Workmen's Compensation Law, states at pp 257–263:

"Whether the employment aggravated, accelerated, or combined with internal weakness or disease to produce the disability is a *question of fact,* not law, and a finding of fact on this point by the commission based on any medical testimony, or in the commoner afflictions where the commissioners themselves have acquired sufficient medical expertise, based on the commission's expert knowledge even without medical testimony will not be disturbed on appeal." (Emphasis added.)

---

[3] The only Michigan authority relied on by the majority is *Carter v General Motors Corp,* 361 Mich 577, 583; 106 NW2d 105, 108 (1960), which held:

"However, in order to uphold the board's decision awarding *any* compensation, this Court must be satisfied, first, that there is competent evidence to uphold the finding of causal connection made by a majority of the board, and second, that plaintiff suffered a disability which is compensable under the act."

The practical result of the twist given by the majority will be a blow to Michigan industry in a competitive market. The implications to the consumer have been directed to our attention for it is the consumer who must absorb the costs of this newly defined disability. The costs of requiring a psychiatric screening for all employment applicants as against costs for this permanent disability are unknown to us. We are told that many cases are awaiting this decision. One can anticipate many more, real and contrived.

The real concern is the result of forcing an employer—large or small—to accept financial responsibility for the lifetime of an employee (Mr. Bahu was about 30 when he quit Chrysler)[4] who has no real "injury" but needs to blame something or somebody for personal problems.

Neither as law nor policy is this result valid.

We would affirm.

J. W. FITZGERALD, J., concurred with M. S. COLEMAN, J.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.

---

[4] He was 28 when he came to this country on May 28, 1967. He left Chrysler on January 4, 1969.