MOSER v FORD MOTOR COMPANY

1. WORKMEN'S COMPENSATION—PREEXISTING CONDITION—DISABILITY
ARISING FROM EMPLOYMENT.

The question of whether an employee's disability arose out of his
employment in a workmen's compensation case involving
preexisting conditions is to be resolved by applying the legal
principle of whether the employment aggravated, accelerated,
or combined with the disease or infirmity to produce the
disability.

2. WORKMEN'S COMPENSATION—PREEXISTING CONDITIONS—DISABILITY
ARISING FROM EMPLOYMENT—PROPER INQUIRIES.

Three questions of fact and law must be resolved by the decision
maker in determining whether a disability involving a preexist-
ing condition arose out of employment: (1) is the claimant
disabled? (2) if so, is the claimant disabled on account of some
personal injury? (3) did the claimant's employment aggravate,
accelerate, or combine with some internal weakness or disease
to produce the personal injury? If affirmative answers to those
questions are supported by the record, the claimant as a matter
of law had a personal injury which arose out of employment
and compensation must be awarded.

3. WORKMEN'S COMPENSATION—LOSS OF EYE—PREEXISTING CONDITION
—AGGRAVATION OF PREEXISTING CONDITION.

An employee who suffers from a non-work-related eye disease
which is treated so as to return his vision to near normal and
who then loses all vision in the affected eye, partially as the
result of work-related causes, is entitled to compensation under
the standard which allows compensation where there is an
aggravation of a preexisting infirmity.

Appeal from Workmen's Compensation Appeal
Board. Submitted June 21, 1977, at Detroit.
(Docket No. 30890.) Decided January 4, 1978.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 82 Am Jur 2d, Workmen's Compensation § 333.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 353, 354.

Claim by William G. Moser against Ford Motor Company for workmen's compensation. Benefits granted. Defendant appealed to the Workmen's Compensation Appeal Board, which affirmed. Defendant appeals. Affirmed.

*Berry, Hopson, Francis & Mack* (by *Joseph P. Mazzola),* for plaintiff.

*Conklin, Benham, McLeod, Ducey & Ottaway, P. C.* (by *David J. Watts),* for defendant.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

P. R. MAHINSKE, J. This workers' compensation appeal involves the problem of what standard to apply in the case of an employee who suffers from a non-work-connected eye disease, obtains medical treatment which corrects his vision to near normal, and then loses all vision in one eye, partially as the result of work-related causes. We hold that the proper standard is the aggravation of preexisting infirmity standard of *Deziel v Difco Laboratories, Inc,* 394 Mich 466, 475–476; 232 NW2d 146 (1975).

Plaintiff William G. Moser began working for defendant Ford Motor Company in 1934. At the hearing plaintiff testified that he first noticed eye problems in 1957 or 1958 when exposed to welding flashes. However, he did not seek medical treatment until May, 1971. At this time bilateral cataracts were diagnosed, and a cataract extraction was performed on plaintiff's right eye. The natural lens was removed, and plaintiff was fitted with a contact lens to replace it. This produced corrected vision of 20/25 to 20/30 in the right eye.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff returned to work with the use of the contact lens. In August, 1971, plaintiff was struck in the head by a conveyor hook at work, causing blurring in the right eye. On October 22, 1971, plaintiff was placed in the hospital for repair of the retinal detachment in the right eye. He again returned to work, and in March, 1972, slipped and fell at work and experienced blurred vision. This incident resulted in a recurrence of retinal detachment in the same area that had been repaired in October, 1971. A second operation was then performed on plaintiff's right eye. While recuperating from this operation plaintiff fell at home and suffered another retinal detachment in a new location. Repair was attempted but was unsuccessful; no useful vision remained in plaintiff's right eye. Nevertheless, plaintiff returned to work on June 16, 1972, and worked until his retirement in September, 1972. Further medical treatment cannot restore the vision to plaintiff's right eye.

Based upon the above evidence, the administrative law judge found that plaintiff did receive personal injuries arising out of and in the course of his employment with defendant in October, 1971 and March, 1972. Payment for specific loss of one eye was awarded.

Defendant employer appealed the above finding. The Workmen's Compensation Appeal Board (WCAB) affirmed, notwithstanding the fact that the original loss of natural lens of plaintiff's right eye was not employment related. The WCAB held that plaintiff's loss of the right eye occurred as a result of his two work-related injuries of October, 1971, and March, 1972. The board found that after the replacement of plaintiff's natural lens, he did have an eye to lose.

The defendant employer appeals, arguing that

plaintiff did not have an eye to lose because he lost the natural lens of his right eye as a result of surgery to correct a nonoccupational cataract condition. Defendant cites as authority for its position *Lindsay v Glennie Industries, Inc,* 379 Mich 573; 153 NW2d 642 (1967), wherein it was held that an eye is lost, within the meaning of the Workers' Disability Compensation Act, when the natural lens is removed. Defendant maintains that *Lindsay* requires reversal of the instant case. Defendant points to the *Lindsay* Court's holding that in a specific loss situation, whether an eye is lost is to be measured by the uncorrected vision test and not by the corrected vision test.

Plaintiff-appellee argues here for affirmance of the findings and award below. Plaintiff concedes he had no useful vision in the right eye without a corrective lens. With the employment of the corrective lens, plaintiff had an eye that did function and was industrially useful until an industrial accident and injury changed the previous loss of vision (which was correctable) to a loss of vision that was permanent and total.

MCLA 418.361(1)(l); MSA 17.237(361)(1)(l) provides that 80 percent loss of vision of one eye constitutes the total loss of that eye. In applying this provision the *Lindsay* Court said at 578:

"We treat this case as one of first impression. We hold the surgical removal of the natural lens made necessary by an injury arising out of and in the course of claimant's employment is loss of an eye within the meaning of the amended statute.

"We recognize that substituting an artificial lens has 'restored' vision to the otherwise sightless eye. We point out that a specific loss award is not made as compensation for diminution of the use of the involved organ or member. It is not awarded to compensate for loss of earnings or earning capacity. It is awarded *irrespective*

of either fact or both. If opthalmological advances and refinements in the use of contact lens has in fact rendered the amended statute inconsonant with its original legislative intent, it is the province of the legislature to say so. We construe the statute in the plain meaning of its wording."

This *Lindsay* directive to the Legislature was ten years ago.

In a situation almost identical to the case at bar the Court deferred response, *Hilton v Oldsmobile Division of General Motors Corp,* 390 Mich 43, 47; 210 NW2d 316 (1973), stating that this precise question was not before it. Then in *Hakala v Burroughs Corp,* 393 Mich 153; 224 NW2d 27 (1974), the Court split on the question of whether to employ the uncorrected vision standard, the corrected vision standard, or one or the other depending upon the circumstances. Finally, on rehearing of the *Hakala* case, *Hakala v Burroughs Corp (On Rehearing),* 399 Mich 162; 249 NW2d 20 (1976), the Court refused to adopt either standard for cases not presenting the specific question decided in *Lindsay, supra.* Rather, the *Hakala* Court stated at 169:

"Section 10(a), the specific loss provision, defining loss of an eye 'for the purpose of this act [as an] 80% loss of vision', does not indicate whether a corrected or uncorrected vision test should be applied. The Legislature has here, as in other statutes, adopted an inartful standard and left to the courts the task of devising common-sense rules for its application in particular factual situations. Our conclusion in *Lindsay* that an uncorrected vision standard should be employed for purposes of determining entitlement to specific loss benefits where a worker suffers a work-related injury to his eye does not compel use of an uncorrected vision test in all cases. Until the Legislature speaks with greater clarity, the courts should decide second injury cases guided primarily by

the legislative purpose in enacting the Second Injury Fund—to help the handicapped obtain and maintain employment."

*Hakala* was heard in 1974 and reheard in 1976—again the Legislature was reminded to act and it has not.

Common sense should dictate the outcome of this appeal. The fact that *Hakala* was a Second Injury Fund case has no real bearing on the outcome of the case at bar; specific loss or no specific loss is the basic issue, coupled with the issue of an eye or no eye to lose. See *Nulf v Browne-Morse Co,* 76 Mich App 344; 256 NW2d 591 (1977), where in another Second Injury Fund case with facts quite similar to plaintiff Moser's, this Court ruled that the plaintiff *did* have an eye to lose.

It is the opinion of this Court that these complex corrected vision-uncorrected vision specific loss cases, which are born of inartful legislative language that has gone without amendment for 10 years after notice by our Supreme Court, are adequately resolved by application of the rule set out in *Deziel v Difco Laboratories, Inc,* 394 Mich 466, 475–476; 232 NW2d 146 (1975). Faced with the case of a person disabled by the stresses of a job which would not have disabled a "normal" individual, the *Deziel* Court stated:

"The Workmen's Compensation Act, MCLA 418.301; MSA 17.237(301), requires that injuries to be compensable must arise 'out of and in the course of' employment. In cases such as these which are asserted to involve pre-existing conditions the question of whether a disability arose out of the employment is resolved by the fact finder only upon inquiry regarding the work connection. The legal principle to be applied is that set forth by Professor Larson in § 12.20 of his treatise, Work-

men's Compensation Law, at 3-231: whether 'the employment aggravated, accelerated, or combined with the disease or infirmity to produce the * * * disability'.

"To apply that principle the decision maker must resolve three questions of fact and law:

"1) Is the claimant disabled?

"2) If so, is the claimant disabled on account of some 'personal injury'?

"3) Did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury?

"If those questions are answered in the affirmative and supported by the record, the decision maker must then find as a matter of law that the claimant had a personal injury, which arose out of the employment, and that compensation must be awarded."

The administrative judge below, sitting as the fact finder, answered these questions in the affirmative. The Workmen's Compensation Appeal Board affirmed. The board's findings are supported by the record made.

The Workmen's Compensation Appeal Board is hereby affirmed. Costs to plaintiff.