BARR v STROH BREWERY

Docket No. 126155. Submitted March 5, 1991, at Lansing. Decided
April 10, 1991; approved for publication May 22, 1991, at 9:10
A.M. Leave to appeal sought.

Gene H. Barr was injured in the course of his employment with
Stroh Brewery and was being paid workers' disability compen-
sation benefits by Stroh's insurer, Michigan Mutual Insurance
Company when Stroh terminated the pension plan which cov-
ered Barr. Barr elected to take his share of the funds in the
pension plan in a lump sum, a portion of which he placed in an
individual retirement account and the remainder of which he
retained. Michigan Mutual reduced Barr's workers' compensa-
tion benefits on the basis of the provision in the Workers'
Disability Compensation Act permitting coordination of work-
ers' compensation benefits with pension payments. A magis-
trate held that there should be coordination, but that the
proper method of coordination was different from that Michi-
gan Mutual had been using. The Workers' Compensation Ap-
pellate Commission ruled that no coordination of benefits was
permissible because the distribution to Barr was a severance
payment rather than a pension payment. Stroh and Michigan
Mutual appealed.

The Court of Appeals *held:*

The appellate commission erred in holding that the benefits
were severance pay. The funds in this case were from a
terminated pension plan that had been subject to the Employee
Retirement Income Security Act, 24 USC 1001 *et seq.* A distri-
bution of funds from such a pension plan under the circum-
stances of this case is a pension payment within the meaning of
§ 354 of the Workers' Disability Compensation Act and is
subject to the coordination of benefits provisions of that section.

Reversed and remanded.

WORKERS' COMPENSATION — PENSION PLANS — COORDINATION OF
BENEFITS.

Funds received by an injured employee upon the employer's

REFERENCES

Am Jur 2d, Workmen's Compensation § 364.
See the Index to Annotations under Pension and Retirement;
Workers' Compensation

termination of a pension plan regulated under the Employee Retirement Income Security Act are pension payments within the meaning of the Workers' Disability Compensation Act and are subject to coordination (29 USC 1001 *et seq.*; MCL 418.354; MSA 17.237[354]).

*Monaghan, LoPrete, McDonald, Sogge & Yakima* (by *Kenneth M. Gonko*), for the plaintiff.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for the defendants.

Amicus Curiae:

*Miller, Cohen, Martens & Ice, P.C.* (by *Murray A. Gorchow*), for International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL-CIO, Local 1038.

Before: GILLIS, P.J., and WEAVER and DOCTOROFF, JJ.

PER CURIAM. Defendants appeal by leave granted an opinion and order of the Workers' Compensation Appellate Commission refusing to allow defendants to coordinate a lump sum distribution to plaintiff. We reverse and remand.

This case was submitted to the magistrate on a stipulation of facts. Plaintiff was employed by Stroh Brewery as a driver/salesman. In November, 1982, he was injured on the job. Defendants began paying plaintiff wage loss benefits of $266.48 a week in February, 1983. In 1984, Stroh's divested itself of plaintiff's employing unit and terminated its pension plan for those employees. Plaintiff was informed of his options, which included immediately receiving a pension of slightly more than $600 per month or having an amount of money equal to his share in the pension plan rolled over to an individual retirement account. Plaintiff se-

lected the second option and received a draft for $56,642.25 from the Stroh Retirement Plan and Trust. Plaintiff rolled over $30,000 into an IRA and retained the remaining $26,642.25.

Plaintiff was notified by Michigan Mutual that his weekly workers' compensation benefit would be reduced to $146.42 on the basis of defendant's decision to coordinate benefits under § 354 of the Workers' Disability Compensation Act, MCL 418.354; MSA 17.237(354).[1] Plaintiff was subsequently informed that his weekly benefit would be further reduced to $73.21 to recoup $6,983.49 in benefits allegedly overpaid.

The magistrate held that the $26,642.25 which plaintiff did not put into an IRA would be coordinated, concluding that the employer is entitled to coordinate $211.29 weekly.

In the appeal to the appellate commission, the parties focused on their dispute concerning the proper coordination method. The appellate commission, however, ruled that no coordination was permissible because the distribution to plaintiff was a severance payment that is outside the scope of § 354.

Defendants assign four errors on appeal. Our decision with respect to the first renders it unnecessary to consider the remainder.

Defendants complain that the appellate commission erred in holding that the benefits distributed were severance pay when the parties had stipulated that they were pension benefits. The appellate commission made a legal characterization that the money plaintiff received was severance pay rather than some form of pension subject to coordination pursuant to § 354. This is a legal conclu-

---

[1] This coordination calculation was based on plaintiff's hypothetical exercise of the distribution most favorable to him, that of receiving more than $600 a month for his lifetime.

sion which is in no way insulated from appellate review. *Deziel v Difco Laboratories, Inc,* 394 Mich 466; 232 NW2d 146 (1975).

The fact that plaintiff had to elect an option with respect to how he would receive his vested pension benefits does not make the payment of those benefits "severance pay." By its nature, severance pay is something outside the embrace of the Employee Retirement Income Security Act, 29 USC 1001 *et seq.,* because it is money paid from the employer's undifferentiated capital, rather than from a segregated protected fund held in trust and regulated by the ERISA. *Shea v Wells Fargo Armored Service Corp,* 810 F2d 372 (CA 2, 1987). The funds plaintiff received had been held in a pension trust regulated by the ERISA. Because of the origin of the funds and the nature of the payment, we conclude that the funds distributed are pension or retirement benefits which are subject to coordination.

We vacate the decision of the appellate commission and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.