MORA v. FOWLERVILLE PUBLIC SCHOOL SYSTEM

WORKMEN'S COMPENSATION—WEEKLY WAGE—SPECIAL CIRCUMSTANCE —FOOTBALL REFEREE.

The weekly wage, under the workmen's compensation act, as the basis for an award payable to a man who refereed high school football games and who was paid $15 for working a game regardless of how many hours it took to play or the distance travelled to and from the game, is to be determined by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying by the number of working days customary in the employment, but not less than five, because of the special circumstances.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 November 2, 1971, at Lansing. (Docket No. 10846.) Decided December 7, 1971.

REFERENCE FOR POINTS IN HEADNOTE
58 Am Jur, Workmen's Compensation § 308 *et seq.*

Mary J. Mora presented a claim for workmen's compensation against the Fowlerville Public Schools System and others. Compensation awarded. Defendants appeal by leave granted. Modified and affirmed.

*Neal, Lichty, Nelson & Anastor,* for plaintiff.

*Ransom, Ransom, Ransom & Heneke,* for defendants.

Before: Danhof, P. J., and Bronson and Targonski,* JJ.

Danhof, J. John Ricardo Mora was 39 years of age at the time of his death on September 17, 1965. He was employed full time as a dispatcher for the Consumers Power Company in Flint, Michigan, working at least 40 hours per week and sometimes in excess thereof. Approximately 2-1/2 years before his death, Mr. Mora commenced officiating at high school athletic events, principally football and basketball games. The deceased was registered with and certified as an official for high school athletic contests by the Michigan High School Athletic Association (MHSAA) and was listed as such in a directory published by the MHSAA. During the summer months, between May and August, the deceased did not officiate at high school athletic contests, but did officiate at softball games in the City of Flint in their summer sports program. During the football season Mr. Mora officiated at high school football games on Friday nights and sometimes on Tuesday nights.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Some time prior to September 17, 1965, a football game had been scheduled between Fowlerville High School and Haslett High School to be played at the Fowlerville High School field on the evening of September 17, 1965. As a matter of practice, the home team (Fowlerville High) provides the officials for the football game. The principal of Fowlerville High School contacted the secretary of the Flint Officials Association requesting the names of registered or certified officials available to officiate this particular game. A letter from the secretary furnished the names of three officials, including that of the deceased, to the Fowlerville High School principal. None of the officials named had ever been contacted before to officiate a game at Fowlerville. The principal sent letters to each of the three men asking them if they would officiate the particular game and enclosed therewith a completed form contract in duplicate signed by the principal on behalf of Fowlerville High School. Each contract provided for compensation of $15 for officiating the game, which was the amount generally paid for services by most high schools to those officiating at high school games. No other compensation or expenses were paid. The amount of compensation paid the officials remained the same without regard to the length of the time of the game, and without regard to the amount of time necessary for the officials to travel from their home to the place where the game was played and back. The principal received a signed contract from each of the officials including Mr. Mora. The contract signed by the deceased is furnished to the Michigan high schools by the Michigan High School Athletic Association.

Mr. Mora left his home in Fenton, Michigan, and met with the other officials at a pre-arranged place on the outskirts of Flint at about 5 or 5:30 p.m.,

from which point they rode to Fowlerville together.
The deceased and the other officials arrived at Fowl-
erville at about 6:45 p.m., and changed into their
official uniforms at the high school.   The game
started at 7:30 p.m., and was completed at approxi-
mately 10:30 p.m.   By pre-arrangement Mr. Mora
acted as the head linesman of the game.   The game
had progressed to within four to five minutes of the
end of the first half when Mr. Mora ran up the field
to retrieve the football, handed the football to
another official, and collapsed.   A doctor was on the
field within half a minute and tried various methods
of resuscitation, but without success.

The hearing referee determined that the deceased
was an employee of the Fowlerville Public School
System and not an independent contractor.   The
referee then made a determination that it would
involve about six hours for the deceased to travel
from his home in Fenton to Fowlerville, perform
the duties, and return home for which he was paid
$15.   Therefore, the referee computed the hourly
rate of pay to be $2.50 per hour which he multiplied
by 40 to make a determination of an average weekly
wage of $100.   The hearing referee then ordered
the Fowlerville School System to pay weekly bene-
fits in the amount of $66.67 to the widow and
children.

The Workmen's Compensation Appeal Board
unanimously affirmed the decision of the referee
that the deceased was an employee of the defendant,
but could not agree on the issue of weekly wage.
Since a majority of four votes on the appeal board
could not be received either way, the referee's
decision on weekly wage was affirmed.

This Court granted leave to appeal on the issue
of computing the deceased's weekly wage and that
is the only question before the Court at this time.

MCLA 412.11; MSA 17.161 provided as follows:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.

"The term 'average weekly wage', as used in this act, is defined to be the weekly wage earned by the employee at the time of his injury but in no case less than 40 times his hourly rate of wage or earning. When it is found that the established normal work week for the employee's classification of employment in the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average 'weekly wage' shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification of employment in that place of employment or his actual earned wages, whichever is greater.

"When the department finds that the employee was employed specifically and not temporarily on a part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the average number of hours worked in the part-time employment. When it is found that the employee has worked an average of 25 hours or more per week in all of his current employments, he shall not be considered a part-time employee.

"If the hourly earning of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

"In cases where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5."

In 2 Larson, Workmen's Compensation Law, § 60.11, pp 88.176–88.179, we find the following:

"The commonest type of wage basis statute is in three parts: The first paragraph usually says that, if the claimant has worked in the kind of employment in which he was injured for substantially the whole of the preceding year, his average annual earnings shall consist of, say, 300 times the average daily wage as a six-day worker, and 260 times the average daily wage as a five-day worker, which he shall have earned while so employed; the second paragraph typically says that, if he did not work in such employment during substantially the whole of the year, the same formula shall be applied to the wage of an employee of the same class working substantially the whole of the year in the same or similar employment in the same or a neighboring place on the days when so employed; and the third paragraph contains some general formula to be used if either of the foregoing methods cannot fairly be applied, such as the following: such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working

at the time of the injury, and of other employees of the same class, *etc.,* or in other employment or self-employment of such employee, shall reasonably represent the annual earning capacity of the injured employee. The average weekly wage is then set at one-fifty-second part of the average annual earnings so computed.

"Many of the litigated cases in this area begin with the question whether the first two tests can fairly be applied or whether resort to the third is appropriate. Typically, this necessity exists when the employment itself, or claimant's relation to it, is inherently intermittent, discontinuous, or part-time, for in such a case the multiplication of average daily wage by 300 would not accurately reflect annual earning capacity in that employment."

The unique facts of this case indicate that the weekly wage cannot be justly computed on the basis of an hourly wage. The utilization of an hourly wage in this case would unjustly favor an official who lives close to the place where the game is to be played and would unnecessarily penalize an official who travels some distance. Further, the prohibition of the statute which states, "When it is found that the employee has worked on an average of 25 hours or more per week in *all* of his current employments, he shall not be considered a part-time employee", prohibits us from considering the deceased a part-time employee.

We believe the instant case is one which clearly requires the application of the last paragraph of the above cited statute which provides: "In cases where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the

number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5." Thus, under the facts presented in this case, it is this provision that should have been used for the computation of the weekly wage. Utilizing this provision, we find the weekly wage should have been computed at $75 per week and the authorized award should be $50 per week.

As modified above, the decision is affirmed.

All concurred.