DAVIS v MERRILL SCHOOL SYSTEM

1. Workmen's Compensation—Limit on Compensation—Wage-
   Earning Capacity—Average Weekly Earnings—Actual
   Earnings.

   A section of the Workmen's Compensation Act which provides
   that compensation payable for an injury, when added to a
   claimant's wage-earning capacity after the injury, shall not
   exceed the claimant's average weekly earnings at the time of
   the injury does not prohibit awarding a claimant an amount
   greater than the claimant was actually making in the employ-
   ment in which he was injured (MCLA 418.371[1]; MSA
   17.237[371][1]).

2. Workmen's Compensation—Average Weekly Wage—40-Hour
   Week.

   The average weekly wage of a claimant for workmen's compensa-
   tion may be less than 40 times his hourly rate of wage where
   the established normal work week for the employee's classifica-
   tion of employment in the establishment of the employer where
   the employee suffered a personal injury is less than 40 hours
   (MCLA 418.371[2]; MSA 17.237[371][2]).

3. Workmen's Compensation—Average Weekly Wage—Special
   Circumstances.

   Where there are special circumstances under which the weekly
   wage of a claimant for workmen's compensation cannot justly
   be determined by applying other provisions of the Workmen's
   Compensation Act, an average weekly wage may be computed
   by dividing the aggregate earnings during the year prior to the
   injury by the number of days when work was performed and
   multiplying such daily wage by the number of working days
   customary in the employment, but not less than five (MCLA
   418.371[5]; MSA 17.237[371][5]).

References for Points in Headnotes

[1–4] 58 Am Jur, Workmen's Compensation §§ 284, 309.
   Workmen's compensation: right to compensation as affected by fact
   that injured employee earns, or is offered, as much as, or more
   than, before the injury. 149 ALR 413.

4. WORKMEN'S COMPENSATION—PART-TIME EMPLOYMENT—DISABLING
   INJURY—AVERAGE WEEKLY WAGE.

In a workmen's compensation case against a school system,
arising out of a disabling injury to a teacher of an adult
education class in upholstery, a determination that $11.88 is
the average weekly wage of the claimant teacher is unjust
where the injury occurred during her part-time employment
but it prevented her from pursuing her full-time employment
as an upholsterer and where the claimant teacher actually
earned well over $100 a week in both her employments; there-
fore, the average weekly wage of the claimant teacher, who was
paid $11.88 a night and who worked one night a week, is to be
calculated by multiplying the claimant teacher's daily wage of
$11.88 by 5, resulting in an average weekly wage of $59.40
(MCLA 418.371[5]; MSA 17.237[371][5]).

Appeal from Workmen's Compensation Appeal
Board. Submitted November 5, 1975, at Lansing.
(Docket No. 22062.) Decided January 26, 1976.
Leave to appeal applied for.

Claim by Ethel L. Davis against Merrill School
System and Hartford Insurance Company for
workmen's compensation. A referee's order award-
ing compensation was modified by the Workmen's
Compensation Appeal Board. Defendant appeals by
leave granted. Reversed and remanded for reentry
of the referee's order.

*Shanahan & Scheid,* for plaintiff.

*Davidson & Breen, P. C.,* for defendants.

Before: ALLEN, P. J., and BRONSON and R. M.
MAHER, JJ.

R. M. MAHER, J. Plaintiff was injured while
teaching an adult education class. The Workmen's
Compensation Hearing Referee determined that
plaintiff's average weekly wage was $59.40, enti-
tling her to compensation of $39.60 per week. The
appeal board modified the decision of the hearing

referee by establishing plaintiff's average weekly wage at $190, entitling her to $84 per week compensation. This Court granted leave to appeal.

While teaching an adult education course in upholstery for defendant, plaintiff caught her right hand in an air compressor. As a result, she lost the first joint of her index finger and up to the second joint of her middle finger. Plaintiff further testified that she could barely move her ring finger and could not return to work. The referee found plaintiff to be totally disabled for work as an instructor and indicated that "the only real question in this case is the manner in which to arrive at an average weekly wage".

Plaintiff was hired by defendant to work 2-1/2 hours, one night per week, for 6 weeks at $4.75 per hour. She regularly worked in an upholstery shop. The hearing referee, relying on the formula found in *Mora v Fowlerville Public School System*, 37 Mich App 371; 194 NW2d 481 (1971), took the 2-1/2 hours at $4.75 per hour to arrive at an $11.88 daily wage. He multiplied that by 5 to reach a weekly wage of $59.40. The appeal board, on the other hand, rejected *Mora's* application to the present case. It relied on the first sentence in MCLA 418.371(2); MSA 17.237(371)(2) and multiplied plaintiff's hourly wage of $4.75 by 40 to arrive at a weekly wage rate of $190. We reverse the appeal board's decision and reinstate the hearing referee's order for compensation benefits.

MCLA 418.371; MSA 17.237(371)[1] supplies the formula for computing compensation:

"(1) The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly

---

[1] Formerly MCLA 412.11; MSA 17.161, § 371 was amended in 1965 to insert the second sentence of the second paragraph and the third paragraph, thus altering the "40 hour presumption".

earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.

"(2) Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning. When it is found that the established normal work week for the employee's classification of employment in the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater.

"(3) When a hearing referee finds that the employee was employed specifically and not temporarily on a part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the average number of hours worked in the part-time employment. When it is found that the employee has worked an average of 25 hours or more per week in all of his current employments, he shall not be considered a part-time employee.

"(4) If the hourly earning of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

"(5) Where there are special circumstances under which the weekly wage cannot justly be determined by

applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5."

While we must decide the method for determining plaintiff's "average weekly wage", in order to avoid as much confusion as possible, we will begin our analysis by pointing out which portions of the statute are not applicable to the case at bar. Subsection (1) provides:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury."

This subsection does not show how to compute the "average weekly wage". It merely states that the "average weekly earnings" should be computed according to § 371 of the act and that plaintiff should in no way be permitted to get more money after his injury by combining his benefits and his existing wage-earning capacity than he received before his injury. Defendant-employer, in this case, argues that subsection (1) prohibits awarding more to plaintiff than plaintiff was actually making in her employment with defendant. This is not true.

See *Mora v Fowlerville Public School System,
supra, Bowles v James Lumber Co.* 345 Mich 292;
75 NW2d 822 (1956), where the award was greater
than plaintiff's "average weekly earnings" from
the job in which he was injured. Subsection (1) is
not applicable to the case at bar.

Subsection (3) provides:

"When a hearing referee finds that the employee was
employed specifically and not temporarily on a part-
time basis, the average weekly wage shall be deter-
mined by multiplying the hourly rate or earning by the
average number of hours worked in the part-time em-
ployment. When it is found that the employee has
worked an average of 25 hours or more per week in all
of his current employments, he shall not be considered
a part-time employee."

This gives us the formula for calculating the "av-
erage weekly wage" for "part-time employees".
However, the subsection does not apply to em-
ployees that work "an average of 25 hours or more
per week in all of [their] current employments".
Plaintiff in our case worked more than 25 hours
per week as an upholsterer and teacher. Subsec-
tion (3) does not apply.

Subsection (4) states:

"If the hourly earning of the employee cannot be
ascertained, or if no pay has been designated for the
work required, the wage, for the purpose of calculating
compensation, shall be taken to be the usual wage for
similar services where such services are rendered by
paid employees."

In the present case, plaintiff's "hourly earning" is
readily ascertainable, rendering subsection (4) in-
applicable.

Either subsection (2) or subsection (5) is the

applicable provision. Subsection (2) is the most difficult to comprehend:

"Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning. When it is found that the established normal work week for the employee's classification of employment in the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater."

The appeal board relied upon the first sentence of this subsection to compute plaintiff's "average weekly wage". It figured that "in no case" could his "average weekly wage" be "less than forty times his hourly rate of wage or earning". Multiplying plaintiff's hourly rate ($4.75) by 40, it concluded that his "average weekly wage" was $190. By doing so, the appeal board entirely neglected the second sentence of subsection (2).[2] However, it is this sentence, which seems to specifically deal with the present situation since the "established normal work week" in the schools for an adult education teacher was definitely "less than forty hours". This being the case, the "average weekly wage" is to be computed by multiplying plaintiff's

[2] We are aware of this Court's opinion in *Lahay v Hastings Lodge No 1965, BPOE,* 59 Mich App 145; 229 NW2d 348 (1975), *lv granted,* 394 Mich 809 (1975). Assuming that case was correctly decided, the "established normal work week for the employee's classification of employment" in *Lahay* must have been 40 or more hours. The opinion, however, does not make this clear.

"hourly rate * * * by the number of hours customarily worked in the employee's classification" or plaintiff's "actual earned wages, whichever is greater". Since the record does not indicate the "number of hours customarily worked" by adult education teachers, subsection (2) requires us to use plaintiff's "actual earned wages" which were $11.88 per week.

The appeal board erred in its use of subsection (2) to arrive at an "average weekly wage" of $190 for plaintiff. If this section had been applied properly, the appeal board should have found that the plaintiff's average weekly wage was $11.88 since her normal work week was less than 40 hours. To find an "average weekly wage" of $11.88, however, would be unjust in this case. Plaintiff's injury occurred during her part-time employment with defendant but it also prevented her from pursuing full-time employment as an upholsterer. An award based on an "average weekly rate" of $11.88, when plaintiff was really earning well over $100 per week is not fair. Thus, we turn to subsection (5):

"Where there are special circumstances under which the weekly wage cannot *justly* be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5." (Emphasis supplied.)

The referee, in this case, calculated that plaintiff received $11.88 for each day that she worked for defendant. He then multiplied this figure by 5. (Although plaintiff only worked one day a week, subsection (5) sets 5 as the minimum.) Using this calculation, the referee determined that plaintiff's

average weekly wage was $59.40. Defendant supports the referee, agreeing that a finding of $11.88 per week would be "unjust".

As previously mentioned, the appeal board would have us distinguish *Mora v Fowlerville Public School System, supra,* relied on by the referee as authority for his method of calculation, from the instant case. It claims that this Court reached its decision in *Mora* because it was impossible to calculate an absolute hourly wage for the decedent. This Court, in *Mora,* did base its decision on the problems involved in computing an hourly wage and *Mora* is distinguishable from the case at bar. However, that is no reason for refusing to apply subsection (5) to the facts of this case.

The decision of the Workmen's Compensation Appeal Board is reversed and the matter remanded for reentry of the referee's order for compensation benefits. Costs to defendants.