NEFF v HILLCREST DRIVE-IN

1. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT—
   RULINGS OF LAW—APPEAL AND ERROR.

   Findings of fact made by the Workmen's Compensation Appeal
   Board are conclusive on appeal absent a showing of fraud;
   however, rulings of law made by the board may be reversed
   whenever the appellate court finds error (Const 1963, art 6,
   § 28, MCLA 418.861; MSA 17.237[861]).

2. WORKMEN'S COMPENSATION—APPEAL BOARD—JURAL RELATIONS—
   INDEPENDENT CONTRACTORS—EMPLOYEE—FINDINGS OF LAW—
   APPEAL AND ERROR.

   A finding that a workmen's compensation claimant is an "inde-
   pendent contractor" or an "employee" is a finding of a jural
   relation; findings of jural relations by the Workmen's Compen-
   sation Appeal Board are reviewed in the same manner as
   findings of law.

3. WORKMEN'S COMPENSATION—PART-TIME EMPLOYEES—SELF-EMPLOY-
   MENT—INDEPENDENT CONTRACTORS.

   An employee who has worked an average of 25 hours or more per
   week "in all of his current employments" is not considered a
   part-time employee under a section of the workmen's compen-
   sation act; however, self-employment and independent contract-.
   ing are not included in the term "in all his current employ-
   ments" (MCLA 418.371[3]; MSA 17.237[371][3]).

4. WORKMEN'S COMPENSATION—BABY-SITTERS—INDEPENDENT CON-
   TRACTORS—ECONOMIC REALITY TEST.

   A baby-sitter, who baby-sat with the children of another party for
   five days per week, eight hours per day, in exchange for $20.00
   per week, was an independent contractor under the economic

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 82 Am Jur 2d, Workmen's Compensation § 568.
   Necessity, form and contents of findings of fact to support adminis-
      trative determinations relating to workmen's compensation. 146
      ALR 123.
[3] 81 Am Jur 2d, Workmen's Compensation §§ 168–170.
[4] 81 Am Jur 2d, Workmen's Compensation § 114.

reality test for determining whether an employee-employer relationship exists in workmen's compensation cases where the baby-sitter worked in her own home and chose her own methods, she was not primarily dependent upon the baby-sitting income as a means of support, the baby-sitting was not an integral part of the other party's work, and the baby-sitter was not subject to the discipline of the other party.

Appeal from the Workmen's Compensation Appeal Board. Submitted October 14, 1976, at Lansing. (Docket No. 27464.) Decided November 23, 1976. Leave to appeal applied for.

Claim by Emma Neff against Hillcrest Drive-In and Michigan State Accident Fund for increased workmen's compensation benefits. Increased benefits granted by the Workmen's Compensation Appeal Board. Defendants appeal by leave granted. Reversed.

*McCroskey, Libner, VanLeuven, Kortering, Cochrane & Brock* (by *Edward M. Welch, Jr.),* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.* (by *James A. Sullivan),* for defendants.

Before: D. F. WALSH, P. J., and ALLEN and L. W. CORKIN,* JJ.

L. W. CORKIN, J. The defendants appeal from a ruling of the Workmen's Compensation Appeal Board reversing certain rulings by the administrative law judge and ordering an unspecified increase in the compensation payments approved by the judge. This appeal requires us to interpret MCLA 418.371; MSA 17.237(371) [text set forth

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*infra]* especially subsection 3 of the statute.[1] That section sets forth special rules for computing compensation awards for workers who were injured on a less than full-time job. This is an appeal by leave granted pursuant to GCR 1963, 806.2(1); MCLA 418.861; MSA 17.237(861).

In September of 1967, the plaintiff began working at two separate jobs. First, she arranged with a Mrs. Stechmann to care for the latter's two children in the plaintiff's home for eight hours per day, five days per week, in return for $20 per week. Shortly after she began the baby-sitting project, the plaintiff also began working for the defendant Hillcrest Drive-In as a waitress. The waitress job was limited to the evening hours. The parties have stipulated that the plaintiff was employed by the defendant on a part-time basis averaging less than 25 hours per week and earned an actual average wage of $41.50 per week.

On October 16, 1967, the plaintiff suffered a totally disabling injury while working as a waitress for the defendant.[2] The disability forced the plaintiff to abandon both of her jobs. The defendant conceded that the injury was compensable under the worker's compensation laws and began voluntary payments of $30 per week based on the statutory minimum for an injured employee with one dependent. MCLA 418.351; MSA 17.237(351). Those payments are continuing today.

Since 1967, the plaintiff has filed and then withdrawn several petitions for increased benefits. The

---

[1] The plaintiff was disabled in 1967. The present Worker's Disability Compensation Act was enacted in 1969. For present purposes, the 1969 act made no substantive changes; thus, there is no retroactivity problem. For convenience, this opinion will use the section numbers in the present compilation.

[2] At oral argument the parties stated that the defendant has recently filed a petition challenging the plaintiff's claim of continued total disability. That fact has no relevance to the present appeal.

petition which led to the present appeal was filed on July 30, 1973. Plaintiff's theory was that MCLA 418.371(3) required that she be treated as a full-time employee of the defendant for purposes of calculating the compensation award. Defendant countered that the special statutory provision cited by the plaintiff [the entire statute is set forth *infra]* was not intended to apply where a plaintiff's other job involved "independent contracting" rather than work as an "employee". The parties necessarily also disagreed over whether the plaintiff as a baby-sitter had been an independent contractor or an employee.

A hearing was held before the administrative law judge on January 22, 1974. Following that hearing, the judge found that MCLA 418.371(3) did not apply to this case. He therefore refused to increase the payments beyond the $30 per week which the defendant was already paying.

The plaintiff appealed that decision to the Workmen's Compensation Appeal Board pursuant to MCLA 418.859; MSA 17.237(859). In a unanimous opinion dated January 16, 1976, the appeal board reversed the administrative law judge and found that the plaintiff was entitled to a compensation award equal to that which she would have received if she had been working for the defendant an average of 40 hours per week. The appeal board did not make an express finding of the amount of compensation because it professed to have insufficient data to determine the plaintiff's average weekly wage. Instead, the board expressed the hope that the parties would be able to agree on the amount of the award once their legal dispute had been resolved.

The parties are divided over the answers to two material questions:

(1) *Does it make any difference whether the plaintiff, in her baby-sitting capacity, was an independent contractor or an employee?*

(2) *If the answer to (1) is "yes", was she an independent contractor or employee?*

Since the administrative law judge denied the request for additional compensation, we know that he answered the questions "yes" and "independent contractor". Due to the imprecise language of the board's opinion, there is simply no way for us to know how the appeal board answered the same questions. In order to reach its ultimate conclusion, it may have answered the first question "no" and then simply ignored the second; or, it may have answered "yes" and "employee".

The first question traditionally would have been called a question of law, whereas the second might have been called a question of fact. The uncertainty about the appeal board's rationale creates a problem because of the severe limitations imposed upon our review power by Const 1963, art 6, § 28 and MCLA 418.861. While we are free to reverse the board's rulings of law whenever we find error, its findings of fact are conclusive absent a showing of fraud. Before the Supreme Court's decision in *Deziel v Difco Laboratories, Inc,* 394 Mich 466; 232 NW2d 146 (1975), we probably would have been forced to remand this case to the appeal board for an elaboration of its findings. But *Deziel* has defined a concept known as a "jural relation" which falls somewhere between fact and law. And, most significantly, *Deziel* held that the courts are empowered to review appeal board findings of jural relations in the same manner as we review the findings of law. The relevant portion of Chief Justice KAVANAGH's opinion in *Deziel* is set forth below:

"In the first place we consider it in order to discuss a claim that is asserted in each of these cases, *viz.,* that the ruling by the Appeal Board is a finding of fact which is made binding upon us if supported by any evidence by Const 1963, art 6, § 28.

"What is always at issue in these cases is a 'jural relation'—a right to compensation in the claimant, and a liability for it in the defendant. As pointed out in 1 Wigmore on Evidence (3rd ed), § 1, p 2, '[t]he material on which this claim of plaintiff rests, if successful, is composite'.

"This means simply that in determining any jural relationship, the facts upon which such relationship is to be predicated are 'ordinary facts' and the jural relationship itself (which in a very real sense is also a fact) is deemed a 'holding', 'ruling', or 'conclusion' of law.

"It is to the former, the facts upon which the jural relationship is based—'ordinary facts'—that the constitution addresses itself, and not the latter—which are called legal principles. See, generally, Wigmore, *supra, '(a) Law and Fact, distinguished.' "* 394 Mich at 474–475.

It now appears the appeal board finding that the plaintiff was an "employee" should be reviewed in the same manner as the appeal board finding in *Deziel* that that plaintiff's disability was not "caused" by his employment. Continuing the analogy, findings in the present case that the plaintiff cared for two children and that she received $20 per week for that care are findings of "ordinary facts" which we cannot dispute in the absence of a showing of fraud. But—assuming that the appeal board even reached the second of the two previously stated questions—the conclusion that the plaintiff was an "employee" amounted to a definition of that term by an inductive application of "ordinary facts". Or, to again use the language of *Deziel,* the appeal board has found that the "jural

relation" known as "employee" exists in this case. We treat that finding as we would any other ruling of law made by the appeal board.

The parties agree that the plaintiff is entitled to compensation equal to two-thirds of her "average weekly wage" subject to the statutory maximum and minimum awards. MCLA 418.351. They disagree, however, as to how her average weekly wage should be computed. That leads us to MCLA 418.371, which reads as follows:

"(1) The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.

"(2) Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning. When it is found that the established normal work week for the employee's classification of employment in the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater.

"(3) When a hearing referee finds that the employee was employed specifically and not temporarily on a

part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the average number of hours worked in the part-time employment. When it is found that the employee has worked an average of 25 hours or more per week in all of his current employments, he shall not be considered a part-time employee.

"(4) If the hourly earning of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

"(5) Where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5."

The focal point of the dispute in the present case is the second sentence of subsection (3). If the plaintiff's baby-sitting job is included as part of her "employment", then it is clear that she worked more than 25 hours per week. Given that finding, other sections of the statute would then direct that she receive compensation equal to the amount she would have received if she had been working for defendant an average of 40 hours per week. *Lahay v Hastings Lodge No 1965 BPOE,* 59 Mich App 145; 229 NW2d 348 (1975), *lv granted,* 394 Mich 809 (1975). Defendants argue that the baby-sitting work should not be included because the plaintiff was an independent contractor and only "employee" work is included in the term "employments" as used in subsection (3). It appears that a ruling in the plaintiff's favor would more than double the compensation she is now receiving and

could result in her receiving more in compensation *alone* than she ever received from *both* of her former jobs combined.[3]

In addition to *Lahay,* two other cases have dealt with analogous situations but none has considered the question raised by this appeal. See *Mora v Fowlerville Public School System,* 37 Mich App 371; 194 NW2d 481 (1971), *Davis v Merrill School System,* 67 Mich App 20; 239 NW2d 745 (1976).[4]

We now must address the two questions which we posed at an earlier point in this opinion.

---

[3] During oral argument, both counsel indicated that they were actually arguing about a difference of approximately $3 per week. In this case we might hold them to those statements; but, as a matter of law, we believe that counsel for the plaintiff has understated her potential claim. The defendant is now voluntarily paying benefits of $30 per week. That figure was apparently arrived at by taking two-thirds of her stipulated average weekly wage received from the defendant. But, since the product would be less than the statutory minimum of $30, the defendant has been paying that amount instead. The pay records in this case indicate that the defendant paid the plaintiff at an hourly rate of $1.25 per hour. All she asks of us is that we apply MCLA 418.371 and multiply that figure by 40 in order to arrive at an average weekly wage of $50. She would then be entitled to compensation equal to two-thirds of her weekly wage, *viz.,* $33.50 per week—hence the $3 difference mentioned by the attorneys. However, that computation overlooks the fact of the earlier stipulation that the plaintiff received an average of $41.50 per week from the defendant. That figure apparently includes the tips and meals which she received in addition to her hourly wage. It has now been held that tips should be included in the computation of weekly earnings. *Morgan v Win Schuler's Restaurant,* 64 Mich App 37; 234 NW2d 885 (1975). The pay records show that the plaintiff worked an average of 16.3 hours per week for the defendant. Dividing her average weekly compensation of $41.50 by 16.5, yields an actual hourly rate of $2.55 per hour. Multiplying that figure by 40 yields an "average weekly wage" of $102 which, in turn, would entitle plaintiff to $68 per week in compensation benefits. We assume that MCLA 418.371(1) requires that figure to be reduced to $61.50, *i.e.,* plaintiff's *actual* weekly wage from both jobs. However, the holding in *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956), which was followed in *Lahay v Hastings Lodge No 1965 BPOE, supra,* might be extended to preclude that reduction.

[4] The question was raised before the appeal board in *Davis* and decided in the plaintiff's favor. However, the defendant in *Davis* did not contest that ruling in this Court. Therefore, *Davis* gives only slight support to the present plaintiff's position.

I. *Does the term "all of his current employments"*
    *as used in MCLA 418.371(3) include work done*
    *as an independent contractor?*

This is a question of first impression. The near-
est thing to controlling precedent that we have
been able to find are the cases holding that an
injured worker is not entitled to worker's compen-
sation benefits if he was working as an indepen-
dent contractor in the job in which he was injured.
*White v Searls & White Tree Service,* 60 Mich App
714; 231 NW2d 522 (1975), *Scott v Alsar Co,* 336
Mich 532; 58 NW2d 910 (1953). The present de-
fendant argues that it would be wrong to deny
benefits to persons injured while working as inde-
pendent contractors while compensating them for
their loss of independent contractor income if they
should be "fortunate" enough to be injured on a
separate part-time job. Defendant also points out
the apparent injustice of requiring it to provide
compensation for all of the plaintiff's losses when
it received the benefit of only a small portion of
her total labor.

On the other hand, the plaintiff points out that
she has lost her baby-sitting income because of an
accident which occurred on the defendant's prem-
ises. By that reasoning, it is just to require the
defendant to compensate her for all of her loss.

We also note two conflicting arguments based
upon MCLA 418.131; MSA 17.237(131), the section
which bars tort suits against an employer by mak-
ing worker's compensation the employee's exclu-
sive remedy. If a person is injured while working
in her capacity as an independent contractor, she
will be able to recover the lost wages from another
job if she can prove that her injuries were negli-
gently caused by the person who contracted for
her services. But, if she is injured on a job which is

covered by worker's compensation, MCLA 418.131 bars her from seeking full relief through a tort suit. Since the statute has made it impossible for the plaintiff to sue to recover her lost baby-sitting income, it can be argued that it is fair to require the defendant to make up that loss.

But the other side of the coin should also be examined. While the worker's compensation legislation takes away the possibility of a tort suit against an employer, it also grants an absolute right to recover for injuries, regardless of fault. If we adopt the defendant's interpretation, the plaintiff will not be able to recover all of her losses, but she will receive at least $30 per week even though her accident may have been caused by her own contributory negligence.

We are also concerned that the opportunity to manufacture claims would be greatly increased if we adopt the plaintiff's interpretation. The rule underlying *Lahay v Hastings Lodge No 1965 BPOE, supra,* makes a plaintiff's earnings from self-employment irrelevant. However, the number of hours worked in self-employment or independent contracting is very important. Suppose, for example, a claimant works part time in a job covered by worker's compensation and, when injured, claims that she works an additional 25 hours per week at home in an activity which combines business and recreation, *e.g.,* buying and selling antiques at auctions. Under *Lahay, supra,* the fact that she would not be disabled from continuing that activity would be irrelevant. The only question would be how many hours per week she devotes to antiques. Would the act require that time spent reading auction catalogs be counted toward the 25-hour requirement? What about counting time spent reading newspapers on the

theory that a successful collector must keep abreast of current trends?

As stated above, the question presented is one of first impression. We hold that the phrase "all of his current employments" as used in MCLA 418.371(3) does not include self-employment or independent contracting. That holding makes it necessary for us to consider the second of the two previously stated questions.

II. *Was the plaintiff an employee or an independent contractor while caring for children in her own home?*

We hold that the plaintiff was an independent contractor. In reaching that conclusion, we have applied the eight-part economic reality test set forth in *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972), as well as the long history of former Justice TALBOT SMITH's campaign to replace the old control test with the economic reality test where the employee-independent contractor distinction is a part of remedial social legislation. See *United States v Silk,* 331 US 704; 67 S Ct 1463; 91 L Ed 1757 (1947), *Pazan v Unemployment Compensation Commission,* 343 Mich 587; 73 NW2d 327 (1955) (SMITH, J., dissenting), *Powell v Employment Security Commission,* 345 Mich 455; 75 NW2d 874 (1956) (SMITH, J., dissenting), *Tata v Muskovitz,* 354 Mich 695; 94 NW2d 71 (1959), *Schulte v American Box Board Co,* 358 Mich 21; 99 NW2d 367 (1959) (SMITH, J., concurring), *Goodchild v Erickson,* 375 Mich 289; 134 NW2d 191 (1965), *McKissic v Bodine, supra,* and, most recently, *Solakis v Roberts,* 395 Mich 13, 25, n 10; 233 NW2d 1 (1975).

The following are among the factors which led us to the conclusion that the plaintiff was an

independent contractor. She did the work in her own home, using her own "tools" and chose her own methods within general parameters impliedly stated by her employer, Mrs. Stechmann. She was not primarily dependent upon the baby-sitting income as a means of support. That income was relatively insignificant alongside her earnings from the defendant and her husband's earnings in his regular job. The work was not an integral part of Mrs. Stechmann's business. Having a baby-sitter made it possible for Mrs. Stechmann to work, but that work was entirely separate from the baby-sitting activity. Mrs. Stechmann could not have "disciplined" the plaintiff beyond withdrawing her children if she felt that the plaintiff was not performing satisfactorily; and, disregarding practical economics, such a withdrawal might have subjected Mrs. Stechmann to a breach of contract action.

The last of the eight tests mentioned in *McKissic v Bodine, supra,* is probably the most important.

"Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute." 42 Mich App at 209.

The worker's compensation law has been described as remedial in nature and generally intended to grant relief to injured workers. In past cases where there has been a contest between two possible interpretations of statutory language, the result has generally been to adopt the interpretation which would grant the most benefits to the injured worker. See *e.g., Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959). But the courts should not be blind to the possible impact on employers. Were we to hold that the plaintiff was an employee in

her capacity as a baby-sitter, that would mean that Mrs. Stechmann—and others who employed baby-sitters under similar arrangements—would have been required to pay worker's compensation benefits if the plaintiff had injured herself in her own home while Mrs. Stechmann's children were present.[5] We do not believe that the Legislature could have intended such a result.

We hold that the plaintiff was an independent contractor while baby-sitting the children in her own home. Since we previously found that independent contractor employment is not included when calculating the hours worked under MCLA 418.371(3) it necessarily follows that the appeal board must be reversed and the order of Judge Ravary should be reinstated.

Reversed.

---

[5] We deliberately ignore possible technical arguments for both parties based on MCLA 418.118; MSA 17.237(118) in order to directly address the substantive liability question involved.